UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| CORTLANDT STREET RECOVERY CORP., | : | |
| WILMINGTON TRUST COMPANY, as Trustee | : | |
| | : | |
| Plaintiffs, | : | Index No. 12-8686 (JPO) |
| | : | |
| -against- | : | |
| | : | |
| GIANCARLO ALIBERTI, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS[1]

Jared B. Stamell
Andrew R. Goldenberg
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
Telephone: (212) 566-4047
Facsimile:  (212) 566-4061
E-Mail:  stamell@ssnyc.com
E-Mail:  goldenberg@ssnyc.com

*Attorneys for Plaintiff Cortlandt Street
Recovery Corp. and Special Litigation
Counsel to Wilmington Trust Company*

---

[1] This Memorandum opposes two motions to dismiss filed by defendants Giancarlo Aliberti (ECF Doc. No. 38) and certain Sponsor Defendants (defined herein) (ECF Doc. No. 46).  Plaintiffs' combined their opposition for convenience as many issues raised in the two motions to dismiss overlap and are identical.

i

# **Table of Contents**

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF THE FACTS ............................................................................................. 2

I.      The Court has Subject Matter Jurisdiction........................................................... 3

A.      The Court has Diversity Jurisdiction.................................................................... 3

B.      Cortlandt is Authorized to Sue as the Elected Representative of the Majority of Noteholders, as well as Assignee of the Right to Collect Payments Due on the PIK Notes ...... 6

C.      The Trustee is Authorized by the PIK Indenture to Pursue the PIK Action as Directed by Representatives of the Noteholders ...................................................................... 10

II.     Abstention Is Not Warranted and the Court Should Retain its Jurisdiction Over this Case   14

A.      The Threshold for Abstention is Not Satisfied Here Where Parties in the State and Federal Action are Not the Same ...................................................................... 15

B.      Exceptional Circumstances Do Not Exist Under the *Colorado River* Doctrine to Support this Court's Abstention.......................................................................... 15

i.      This Case Does Not Involve the Exercise of Jurisdiction over a Res or Property, and the Federal Forum is Not Inconvenient ...................................................................... 15

ii.     Avoidance of Piecemeal Litigation.................................................................... 16

iii.    The Order in Which the Cases Were Filed and the Status of the Proceedings Do Not Support Abstention ...................................................................................... 16

iv.     The Law Supplying the Rule of Decision Does Not Favor Abstention ........................ 17

v.      The State Actions Will Not Adequately Protect Plaintiffs' Rights.................................. 18

III.    This Court has Personal Jurisdiction over Aliberti because the Forum Selection Clause in the Indenture Provides for Jurisdiction in a Court in New York and for Application of New York Law ............................................................................................. 19

A.      Aliberti is Bound by the Forum Selection Clause because he is a Signatory to the PIK Indenture .................................................................................................. 20

IV.     This Court has Personal Jurisdiction over the Defendants because they Directly Benefitted from the Loans and are Closely Related to the Signatories ................................... 21

V.      Dissolution of a Company is no Impediment to its Liability to Creditors for Unpaid Debts under Either Cayman or BVI Law................................................................. 24

A.      The Cayman Sponsor Defendants may be Sued ........................................................ 25

B.      The BVI Sponsor Defendants may be Sued.............................................................. 26

VI.    New York is a Convenient and Appropriate Forum ...................................................... 27

A.     Deference Should be Given to Plaintiffs' Choice of Forum ......................................... 28

B.     Defendants Failed to Prove the Alternative Forums are Adequate .............................. 29

C.     Balancing the Private and Public Interests Favors the Plaintiffs' Choice Forum .......... 30

i.     The "Private Interest" Factors Support Plaintiffs' Choice of Forum................................ 30

ii.    The "Public Interest" Factors Support Plaintiffs' Choice of Forum................................. 32

CONCLUSION.................................................................................................................. 33

## Table of Authorities

*Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir. 1988) ............................................................ 21

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 17 (2d Cir. 1997) ................. 8

*AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146 (2008) ......... 15

*Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002)......................................................... 34

*American Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. American Boat Co., LLC,*
2012 WL 527209, at *2 (S.D.N.Y. 2012) .......................................................................... 23, 26

*Antares Mgmt. LLC v. Galt Global Capital, Inc.*, 2013 WL 1209799, at *4 (S.D.N.Y. 2013)........
.......................................................................................................................................... 23, 25

*Bank Hapoalim (Switzerland) Ltd*, 26 A.D.3d at 288 (1st Dep't 2006) ...................................... 37

*Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan*, 273 F.3d 241, 246 (2d
Cir. 2001) ................................................................................................................................. 35

*Central Bank v. City of Fresno*, 1988 WL 60158 (9th Cir. 1988) ................................................ 15

*Cilli v. Republic of Argentina*, 2006 WL 888158, at * 1 (S.D.N.Y. 2006)..................................... 9

*Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994)................................................................... 23

*Cont'l Bank, N.A. v. Caton*, 1990 WL 129452, *4-7 (D. Kan. 1990)........................................... 16

*Continental Illinois National Bank and Trust Co., v. Hunt International Resources Corp.*, Del.
Ch., C.A. Nos. 7888, 7844, Jacobs, V.C. (February 27, 1987)................................................. 13

*Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 2013 WL 592672, *8 (S.D.N.Y. Feb. 15, 2013) .... 20

*DDR Const. Serv., Inc. v. Siemens Indus., Inc.,* 770 F. Supp. 2d 627, 645–646 (S.D.N.Y.2011) 17

*Direct Mail Prod. Servs. Ltd., v. MBNA Corp.,* 2000 WL 1277597, at *3 (S.D.N.Y. 2000) ....... 27

*Eclaire Advisor Ltd. as Trustee to Daewoo Int'l (Am.) Corp. Creditor Trust v. Daewoo Eng'g &
Const. Co., Ltd.*, 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005) .................................................. 36

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191
(S.D.N.Y. 2011) ....................................................................................................................... 15

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988)............. 15

*Export-Import Bank of the U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y.
2010) ........................................................................................................................................ 23

*Feldbaum v. McCrory Corp.*, 1992 WL 119095, at *7 (Del Ch. 1992) ...................................... 12

*Fontana v. Republic of Argentina*, 415 F.3d 238, 242 (2d Cir. 2005).......................................... 11

*Freeford Ltd. v. Pendleton*, 53 A.D.3d at 32, 39 (1st Dep't 2008)............................................... 28

*Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 156 (2008)..................... 14

*Garcia v. Tamir*, 1999 WL 587902 (S.D.N.Y. 1999).................................................................. 21

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ......................................................... 33, 36, 38

*Guy Carpenter & Co. v. Samengo-Turner*, 2007 WL 1705070, at *3 (S.D.N.Y. June 14, 2007) 21

*Haywin Textile Products, Inc. v. International Finance Inv.*, 137 F. Supp. 2d 431, 437 (S.D.N.Y.
2001) ........................................................................................................................................ 37

*Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010) ..................................................................... 5

*Highland Capital Mgmt. LP. v. Schneider*, 198 Fed. Appx. 41, 45 (2d Cir. 2006) ........................ 6

*IDT Domestic Telecom, Inc. v. Estrella Telecom, Inc.*, 2010 WL 1047648, at *1 (S.D.N.Y. 2010) ..................................................................................................................... 32, 36, 39

*In re Asbestos Litig.,* 963 F. Supp. 247, 253 (S.D.N.Y. 1997) ...................................................... 19

*In re Bank of Am. Corp. Secs.,*757 F. Supp. 2d 260, 345 (S.D.N.Y. 2010)................................... 19

*In re Bd. of Dir. of Multicanal, S.A.*, 307 B.R. 384, 389 (Bankr. S.D.N.Y. 2004)......................... 9

*In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011) ........................................ 27

*In re Parrish*, 246 A.D.2d 449 (1st Dep't 1998) ........................................................................ 28

*In re Refco Inc., Sec. Litig.,* 2009 WL 5548666, at *5 (S.D.N.Y. 2009)...................................... 23

*Indosuez Int'l Fin. B.V. v. National Reserve Bank*, 98 N.Y.2d 238, 246-48 (2002).................... 28

*International Equity Inv., Inc. v. Cico,* 427 F. Supp. 2d 503, 506 (S.D.N.Y. 2006) .................... 37

*Iragorri v. United Techs. Corp* ., 274 F.3d 65, 73-74 (2d Cir. 2001)........................ 32, 33, 35, 38

*JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 400 (S.D.N.Y. 2004) ........................ 24

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 470 (1988) ....................................................... 24

*Kshel Realty Corp. v. City of N.Y.,* 2003 WL 21146650, at *6 (S.D.N.Y. May 15, 2003) .......... 20

*Lange v. Citibank, N.A.*, 2002 WL 2005728, at *7 (Del. Ch. 2002)............................................... 13

*LaRoss Partners LLC v. Contact 911 Inc.,* 2012 WL 2856099, at *3 (E.D.N.Y. 2012) .............. 25

*Lazard Bros & Co. v. Midland Bank, Ltd.,* 4 ([1932] All ER Rep 571)....................................... 31

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ............................................................. 10

*MacKay Shields v Sea Containers, Ltd.*, 300 A.D.2d 165, 166 (1st Dep't 2002)........................ 11

*Magi XXI Inc. v. Stato Della Citta Del Vaticano,* 818 F. Supp. 2d 597, 609 (E.D.N.Y. 2011) ... 27

*Magten Asset Mgmt. Corp.*, 2007 WL 1326795 at *7 (Sup. Ct. N.Y. Cty. 2007)........................ 15

*Meriwether v. Garrett*, 102 U.S. 472, 529 (1880) ........................................................................ 29

*MGM Studios Inc. v. Canal Dist. S.A.S.*, 2010 WL 537583, at *5 (S.D.N.Y. 2010).................... 26

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173-174 (2d Cir. 2005)............................................................................................................................... 9

*Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC*, 2003 WL 22882137, at *5-6 (S.D.N.Y. 2003) ............................................................................................................................................ 26

*Newman-Green Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ......................................................................................................................................... 6

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101-100 (2d Cir. 2012)........................................................................................................................ 17

*Norex Petroleum Limited v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) .............. 32

*North Star Hotels Corp. v. Mid-City Hotel Assocs.,* 696 F. Supp. 1265, 1270 (D. Minn. 1988) ... 5

*Oscar Gruss & Son, Inc. v. Hollande*r, 337 F.3d 186, 194 (2d Cir. 2003) ................................... 4

*Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996)................................................ 37

*Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 127 (2d. Cir. 1995).... 20

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) ........................ 34

*Premier Bank v. Tierney*, 114 F. Supp. 2d 877 (W.D. Mo 2000)................................................. 16

*PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 73 (2d Cir. 1998) ......................... 34

*R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 169 (2d Cir. 1991)......................... 38

*Regions Bank v. Blount Parrish & Co., Inc.*, 2001 WL 726989 (N.D. Ill. 2001)......................... 15

*Regions Bank v. Blount Parrish & Co., Inc.*, 2004 WL 3832307 (M.D. Ala. 2004)................... 16

*Rosenblum v. Dingfelder,* 111 F.2d 406, 407 (2d Cir. 1940).......................................................... 7

*Ross v. Bank of Am., N.A.,* 524 F.3d 217, 222 (2d Cir.2008) ..................................................... 10

*Rostuca Holdings, Ltd. v. Polo*, 246 A.D.2d 475 (1st Dep't 1998) ................................................ 37

*Samaha v. Presbyterian Hosp. in New York,* 757 F.2d 529, 531 (2d Cir.1985) ........................... 7

*Sardanis v. Sumitomo Corp.*, 282 A.D.2d 322, 323 (1st Dep't 2001) ............................................ 8

*Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F. Supp. 1314, 1321 (S.D.N.Y.1989)............... 36

See *In re Kraft-Murphy Company, Inc.,* 2011 WL 5420808 (Del. Ch. 2011) .............................. 31

*Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)....................................... 11, 16, 19

*Skanga Energy & Marine Ltd.,* 875 F. Supp. 2d  264, 272 (S.D.N.Y. 2012) ............................... 32

*Springwell Navigation Corp. v. Sanluis Corp., S.A.*, 46 A.D.3d 377 (1st Dep't 2007)................ 11

*Sprint Commc'ns Co v. APCC Servs., Inc.,* 554 U.S. 269, 278 (2008) ......................................... 7

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)............................................. 32

*Tedesco v. A.P. Green Indus., Inc.*, 8 N.Y.3d 243, 248 (2007) ..................................................... 29

*Titus v Wallick*, 306 U.S. 282, 288 (1939)..................................................................................... 7

*U.S. v. United States Currency in the Amount of $598,826,* 2007 WL 2713367 (E.D.N.Y. 2007)
   .................................................................................................................................................. 10

*Universal Grading Serv. v. eBay, Inc.*, 2009 WL 2029796, at *15, 17 (E.D.N.Y. 2009) ............ 26

*Village of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) .................................. 18, 19, 20

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008)............ 8

*Weingrad v. Telepathy, Inc.*, 2005 WL 2990645, at *5-6 (S.D.N.Y. 2005) ................................. 26

*Welch v. Mandeville*, 14 U.S. 233, 236 (1816) .............................................................................. 7

*Wells Fargo Century, Inc. v. Hanakis,* 2005 WL 1523788, at *9 (E.D.N.Y. June 28, 2005) ...... 17

*Wells v. Shearson Lehman/Am. Exp., Inc.*, 72 N.Y.2d 11, 18, 530 N.Y.S.2d 517, 521 (1988).... 38

*Woodford v. Community Action Agency of Greene Cty, Inc.,* 239 F.3d 517, 522 (2d Cir. 2001) 17, 18

*Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 568 (7th Cir. 1986)............................................. 6

**Statutes**

CPLR 327(b)................................................................................................................................... 19

Fed. R. Civ. P. 17(a) ........................................................................................................................ 9

Federal Rule of Civil Procedure 17(b)........................................................................................... 26

N.Y. G.O.L. 5-1402 ....................................................................................................................... 19

N.Y. Gen. Oblig. § 13-101............................................................................................................... 6

N.Y. Gen. Oblig. § 13-109............................................................................................................... 6

New York CPLR § 1025................................................................................................................. 26

**Treatises**

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1545 (1990) ......................... 7

## PRELIMINARY STATEMENT

Plaintiffs are Cortlandt Street Recovery Corp. ("Cortlandt"), a company formed as the assignee of claims from owners of promissory notes (the "Noteholders") that sues to collect on those notes[2] and Wilmington Trust Company, as indenture trustee under the PIK Indenture, as defined below, and not individually ("WTC" or the "Trustee," and together with Cortlandt, the "Plaintiffs").  The owners of the notes that assigned their claims to Cortlandt own a substantial part of €1.5 billion borrowed by the Defendants[3] on December 21, 2006.  The PIK Notes are in default.  The loan proceeds were withdrawn from companies in whose names the money was borrowed by their owners who are the Sponsor Defendants.  Ultimately, the loan proceeds were transferred to two private equity firms, TPG Capital, L.P. ("TPG") and Apax Partners, LLP ("Apax"), and their affiliates who owned the Sponsor Defendants.  PNC ¶ 1.[4]  The companies in whose names the money was borrowed were rendered insolvent and never repaid the loans.

Plaintiffs demand amounts due and allege improper and illegal corporate distributions, fraudulent conveyances and related causes of action.  The cases are venued in New York County because the PIK Note Indenture contains a forum selection clause, drafted as directed by the Defendants, conferring jurisdiction over courts in New York County on suits to enforce the PIK Notes.  *Id.* at ¶ 9.

---

[2] Specifically, here, Plaintiffs sue to collect amounts due under certain PIK Notes (the "PIK Notes") issued by Hellas Telecommunications Finance, S.C.A. ("Hellas Finance" or the "Issuer") pursuant to an Indenture governing the PIK Notes (the "PIK Indenture").

[3] The Defendants are Giancarlo Aliberti ("Aliberti") and Hellas Telecommunications Co-Invest Ltd., Hellas Telecommunications, Employees Ltd., TCW HT Co-Invest I L.P. and TCW HT Co-Invest II L.P. (the "Sponsor Defendants") (collectively, the "Defendants").

[4] "PNC" refers to the PIK Note Amended Complaint.  *Cortlandt Street Recovery Corp., v. Giancarlo Aliberti, et al.*, No. 12-8686-JPO.

## SUMMARY OF THE FACTS

On December 21, 2006, PIK Notes were issued in the name of Hellas Finance, as Issuer of the PIK Notes. *Id.* at ¶ 57. The PIK Notes were issued in exchange for €200,000,000. In addition, Hellas Telecommunications II, S.C.A. ("Hellas II") issued €960,000,000 and €275,000,000 of Subordinated Notes.

Of the €1.5 billion loaned in exchange for the Notes, €973,657,610 was transferred to the Sponsors[5], without consideration. Stamell Aff., Ex. A at 156. Of the loan proceeds transferred, €172,454,031 was transferred to the Sponsor Defendants. *Id.*

On December 21, 2006, when the PIK Notes were issued, Defendant Aliberti was a director of each of the Sponsor Defendants. *Id.*, Ex. B. Aliberti signed the PIK Notes as an officer of Hellas Finance, the Issuer. *Id.*, Ex. C. Aliberti signed each of a series of documents to issue the PIK Notes as a Director of each Sponsor Defendant and to transfer €172,454,031 of the loan proceeds from the Issuer to the Sponsor Defendants. *Id.*, Ex. A at 156; Ex. B. The Sponsor Defendants distributed the funds to other affiliates of TPG and Apax and dissolved. Aliberti thus signed his name as an officer or director for every company involved in the transaction. *Id.*, Ex. B.

Before December 21, 2006, the Issuer was thinly capitalized. Hellas Finance had a negative equity of €605,276. *Id.*, Ex. D at 1. After borrowing €1.5 billion on December 21, 2006 and transferring the loan proceeds to the Sponsor Defendants and other shareholders, the Issuer was deeply insolvent.

The method used to transfer loan proceeds to the owners of Hellas Telecommunications, S.á.r.l. ("Hellas"), the company that owned Hellas Finance, were through securities called "Convertible Preferred Equity Certificates" or "CPECs." PNC ¶¶ 71-75. The Offering

---

[5] Troy LP Inc., Apax WW Nominees Ltd., TPG Troy, LLC, T3 Troy, LLC and the Sponsor Defendants in this case.

Memorandum stated that the CPECs were equity, that Hellas had no obligation to redeem them, and that Hellas was affirmatively prohibited from redeeming the CPECs unless it was able to pay for all its other liabilities. Stamell Aff., Ex. A at F-20. Nonetheless, Hellas redeemed the CPECs from the Sponsors, its shareholders, at 35 times par value, that is 35 times the cash the Sponsors paid for the CPECs less than a year earlier, which was €27 million. PNC ¶ 142. The redemption of €973,700,000 was a gain of €946,000,000, or a one year return of 3,500%! Id.

The Offering Memorandum misrepresents the transaction as borrowing money backed by collateral to repay existing loans. Stamell Aff., Ex. A at 12, 173. In truth, the transaction was borrowing €1.5 billion, providing no collateral, and using the proceeds to pay a €946,000,000 dividend to Defendants. Hellas's debt ballooned, leaving it deeply insolvent. PNC ¶ 135. Defendants were transferees of the €1.5 billion Hellas borrowed. Id. at ¶¶ 144-179.

After the money was borrowed and distributed to TPG, Apax and their Affiliates, the Sponsor Defendants dissolved. Id. at ¶ 18.

## ARGUMENT

### I.    The Court has Subject Matter Jurisdiction

#### A. The Court has Diversity Jurisdiction

Diversity jurisdiction is determined for each Defendant separately. Defendants are citizens of foreign states and Plaintiffs are New York and Delaware entities. As such, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2) because "the action is between citizens of states and citizens of foreign states." Id. at ¶ 7.

Defendants claim diversity jurisdiction is lacking for three reasons. First, they argue there is no diversity jurisdiction because Cortlandt's assignors, the Noteholders, are foreign

citizens. Aliberti Memo at 8; SD Memo at 7-8.[6] Defendants cite *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003) in support of this argument that the Court must look to the citizenship of Cortlandt's assignors, not Cortlandt itself. *Id.* In *Oscar*, however, defendant argued lack of diversity jurisdiction because plaintiff's employees were the real parties in interest and joinder of the employees would destroy diversity. *Id.* at 194. The court rejected this argument finding the plaintiff employer had express power to litigate on behalf of the employees and was "clearly intended to be the master of the litigation." *Id.* at 195 (internal quotations omitted). Cortlandt is in a similar position under the assignments in which it has been assigned full rights to collect amounts due and to pursue all remedies with respect to the PIK Notes and the citizenship of Cortlandt's assignors has no relevance to diversity jurisdiction.

Second, Defendants claim the Amended Complaint does not allege the citizenship of the limited partners of defendants TCW HT Co-Invest I, L.P. and TCW HT Co-Invest II, L.P. (the "TCW Defendants") and that alone requires dismissal. Aliberti Memo at 7; SD Memo at 7. Defendants state – falsely – that they provided discovery related to the citizenship of the limited partners of the TCW Defendants. Aliberti Memo at fn 7; SD Memo at fn 5. To the contrary, however, despite their obligation to provide information on the citizenship of the TCW Defendants' partners (*See* Local Rule 26.1 and the Court's Order, ECF Doc. 32 (8685)), Defendants failed to do so, claiming they did not have information on the citizenship of the partners or even an address. *See* ECF Doc. 36, Case No. 12-8685. Indeed, when Plaintiffs requested jurisdictional discovery, Defendants claimed they would "show that there is no basis for additional discovery because, regardless of the citizenship of the pre-dissolution limited partners of [the TCW Defendants], there is no diversity jurisdiction in these cases." *See* ECF

---

[6] "Aliberti Memo" refers to Giancarlo Aliberti's Memorandum of Law in Support of his Motion to Dismiss. (ECF Doc. No. 41). "SD Memo" refers to the Sponsor Defendants' Memorandum of Law in Support of their Motion to Dismiss. (ECF Doc. No. 47).

Doc. 39, Case No. 12-8685.  Ironically, Defendants argue that the Amended Complaint should be dismissed where they opposed discovery on citizenship and there is clearly diversity jurisdiction as at least two Sponsor Defendants and Aliberti.  If Defendants now want to claim the motion to dismiss depends on information they did not provide and discovery on which they opposed, then discovery should be obtained before any motion to dismiss is considered.

Finally, Defendants argue there is no diversity jurisdiction because Cortlandt is a citizen of a foreign state.  Aliberti Memo at 8-9; SD Memo at 8-9.  However, Defendants acknowledge that a corporation's principal place of business is determined by the "nerve center" test which looks to the place where the corporation's activities are directly controlled.  *Id*.; *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010).  Here, Cortlandt's principal place of business is New York where Cortlandt's directors direct and control litigation from offices in New York.  In addition, Cortlandt's books and records are kept in New York and all business activities of collecting the PIK Notes are carried out in New York.  Significantly, Defendants do not present any viable evidence that Cortlandt conducts business activities in any other location.[7]  Rather, they base their argument on alleged evidence that Cortlandt's president resides in Vienna and as a result, claims Austria is its principal place of business.  Aliberti Memo at 8-9; SD Memo at 8.  However, where a company's president lives is not its principal place of business.  *See, e.g., North Star Hotels Corp. v. Mid-City Hotel Assocs.,* 696 F. Supp. 1265, 1270 (D. Minn. 1988) (although all officers and directors resided in Texas, principal place of business was in Minnesota because sole purpose of corporation was operating a Minnesota hotel); *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 568 (7th Cir. 1986) (corporation had its principal place of

---

[7] Defendants claim that "Cortlandt's attorneys previously advised the state court that Cortlandt 'is located in Europe.'"  Aliberti Memo at 9; SD Memo at 8.  However, the letter submitted in state court states that Cortlandt's client is "located in Europe."  Fischler Aff., Ex. F.  The residence of a corporation's client has nothing to do with the corporation's citizenship.

business in New York despite having directors reside in Connecticut, New York, Massachusetts, Texas and Vermont).  As such, Cortlandt is clearly a citizen of New York creating diversity jurisdiction with Defendants.

Moreover, even if Defendants were correct that there is an issue as to the parties' diversity, which there clearly is not, Defendants are jointly and severally liable for the PIK Notes and this Court may sever claims against any of Defendants to preserve subject matter jurisdiction.  *See Highland Capital Mgmt. LP. v. Schneider*, 198 Fed. Appx. 41, 45 (2d Cir. 2006) (severance of party was warranted to preserve diversity jurisdiction against holders of promissory notes); *Newman-Green Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (nondiverse party may be dismissed to preserve diversity jurisdiction). This court has the power to allow a dispensable, non-diverse party to be dropped at any time so long as the dismissal of that party will not prejudice any of the parties in the litigation.  *Id.*  Here, Defendants are dispensable parties because they are being sued as joint tortfeasors and "it is settled federal law that joint tortfeasors are not indispensable parties." *Samaha v. Presbyterian Hosp. in New York,* 757 F.2d 529, 531 (2d Cir.1985).

B. Cortlandt is Authorized to Sue as the Elected Representative of the Majority of Noteholders, as well as Assignee of the Right to Collect Payments Due on the PIK Notes

The right of an assignor to assign a cause of action and the right of an assignee to sue is established by statute.  *See* N.Y. Gen. Oblig. § 13-101 ("Any claim or demand can be transferred").[8]  Defendants nonetheless challenge Cortlandt's standing, arguing that it is required to own the PIK Notes.  Aliberti Memo at 10; SD Memo at 9-10.

---

[8] N.Y. Gen. Oblig. § 13-109 states: "As used in section 13-101, 13-103, 13-105 and 13-107, the term 'transfer' includes sale, assignment, conveyance, deed and gift."

GOL §13-101 states "[a]ny claim or demand can be transferred."  The Supreme Court reviewed the history of assignment of claims in *Sprint Commc'ns Co v. APCC Servs., Inc.,* 554 U.S. 269, 278 (2008) (citing Justice Story in *Welch v. Mandeville*, 14 U.S. 233, 236 (1816)), and held that that an assignee of a legal claim for money owed has standing to pursue and bring suit on that claim even when the assignee has promised to remit the proceeds of the litigation to the assignor.  In 1939, the Supreme Court held an assignment of a claim "'to sell, assign, transfer and set over' the chose in action to petitioner, was sufficient under the New York statutes and authorities to give petitioner dominion over the claim for purposes of suit." *Titus v Wallick*, 306 U.S. 282, 288 (1939); *see also Rosenblum v. Dingfelder,* 111 F.2d 406, 407 (2d Cir. 1940); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1545 (1990) ("[F]ederal courts have held that an assignee for purposes of collection who holds legal title to the debt according to the governing substantive law is the real party in interest even though the assignee must account to the assignor for whatever is recovered in the action").

The cases Defendants cite do not hold differently.  In *Sardanis v. Sumitomo Corp.*, 282 A.D.2d 322, 323 (1st Dep't 2001), the court explained that to be a real party in interest, an assignee "must have some title, legal or equitable, to the thing assigned."  The court ultimately held that the plaintiff did not have a valid assignment as the assignment in question required but was never given corporate board approval. *Id.* at 324.  Here, the irrevocable right to collect on the PIK Notes has been duly assigned to Cortlandt, and the assignment is authorized by GOL §13-101.  In *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 17 (2d Cir. 1997), the court stated "claims or choses in action may be freely transferred or assigned to others."  There, however, rights were transferred not through an assignment, but by a power of attorney that could be terminated at will. *Id.* at 18.  Similarly, in *W.R. Huff Asset Mgmt. Co. v.*

7

*Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008), plaintiff also claimed standing to sue for his investment company clients by virtue of a power of attorney. *Id.* Finally, in *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173-174 (2d Cir. 2005), the court determined plaintiff, a nonprofit ministry, did not have associational standing to sue on behalf of its volunteers since the volunteers invested different amounts of labor and an individualized inquiry would be required to determine their injuries. *Id.* at 174. This case does not apply here because Cortlandt is not an association, and therefore, no individualized inquiry is possible because it has no association members.

Defendants also argue Cortlandt lacks standing because its assignors are not registered Holders of the PIK Notes. Aliberti Memo at 11-12; SD Memo at 11. The assignors, however, are owners of Book-Entry Interests in the PIK Notes and they are entitled to payment of principal and interest. Stamell Aff, Ex. E § 1.01. "All holders of notes that are absolute promises to pay have contract rights against the issuer that cannot be impaired without consent. This is true whether the note is issued in a series under a TIA [Trust Indenture Act] qualified indenture, under an indenture not qualified under the Trust Indenture Act, or issued directly by the borrower to the lender without any indenture at all." *In re Bd. of Dir. of Multicanal, S.A.*, 307 B.R. 384, 389 (Bankr. S.D.N.Y. 2004) (beneficial holders of notes has standing to sue); *Cilli v. Republic of Argentina*, 2006 WL 888158, at * 1 (S.D.N.Y. 2006) ("a holder of a beneficial interest in a bond will have standing to sue if the holder has a cause of action based on the ownership of a beneficial interest at the time suit is commenced").

Whether or not other parties may have standing to sue, beneficial owners have the right to the money that is owed. To have standing, a plaintiff "must have suffered an injury in fact" that is "concrete and particularized," "actual or imminent," and "fairly traceable to the challenged

action." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and alterations omitted). "Injury in fact is a low threshold...." *Ross v. Bank of Am. N.A.,* 524 F.3d 217, 222 (2d Cir.2008). Allegations in the complaint alleging that Cortlandt has full right to payment of the monies owed to beneficial owners is sufficient. *U.S. v. United States Currency in the Amount of $598,826,* 2007 WL 2713367 (E.D.N.Y. 2007) (allegation of a financial interest in cash established standing).

The registered Holder of the Global Notes[9], Bank of New York ("BNY"), has no financial interest in the PIK Notes and Defendants provide no evidence or other basis to believe BNY has any stake in the controversy or that it is the real party in interest in these actions. *See* Fed. R. Civ. P. 17(a). Since the owners with Book-Entry Interests are the only parties with a stake in litigation who assigned their rights to Cortlandt to collect on the PIK Notes, Cortlandt has standing to sue. *Lujan,* 504 U.S. at 560 (1992).

Defendants cite *Springwell Navigation Corp. v. Sanluis Corp., S.A.*, 46 A.D.3d 377 (1st Dep't 2007) where the First Department held that plaintiff had no right to sue under the Trust Indenture Act, relying on the federal bankruptcy court decision in *In re Multicanal*, but cited 307 B.R. at 388-389 on a completely different subject and, overlooked the footnote (307 B.R. 387 n.2) holding the opposite. This Court should rely on case law and authority the First Department looked to that beneficial holders of notes have standing to sue and not the First Department's misreading of it. Moreover, *MacKay Shields v Sea Containers, Ltd.***,** 300 A.D.2d 165, 166 (1st Dep't 2002) and *Fontana v. Republic of Argentina*, 415 F.3d 238, 242 (2d Cir. 2005) which Defendants cite are inapposite because neither case addressed whether the registered holders had any stake in the outcome of the litigation that would give them Article III standing.

---

[9] The PIK Notes were held in global form. The Global Notes were deposited and registered in the name of BNY, the Holder of the PIK Notes. Stamell Aff., Ex. E at § 1.01.

9

C.  <u>The Trustee is Authorized by the PIK Indenture to Pursue the PIK Action as Directed by Representatives of the Noteholders</u>

In asserting that the Trustee lacks standing to pursue claims on behalf of the Noteholders, Defendants take a narrow and self-serving view of an indenture trustee's duties that is inconsistent with both the PIK Indenture and applicable authority.  Here, the Trustee is authorized, <u>and directed</u>, to bring this action against Defendants under the PIK Indenture on behalf of Noteholders.  Specifically, the Trustee has standing to bring this suit under the PIK Indenture for at least the following reasons: (1) the Trustee is pursuing an available remedy to collect payment under the PIK Notes and enforce various provisions of the PIK Indenture under § 6.03; (2) the majority noteholders provided WTC with a clear direction to act under §§ 6.05 and 6.06; (3) WTC is exercising its rights and powers vested in the PIK Indenture trustee under § 7.01; and (4) WTC is bringing this action to prevent impairment of pledged assets under § 11.04. Therefore, the Trustee has standing.  *See* Stamell Aff., Ex. E.

Defendants argue, without any meaningful explanation, that the Trustee is barred from bringing any suit against third parties such as Aliberti.  Aliberti Memo at 12-14; SD Memo at 12-13.  Notably, Defendants make the opposite argument, stating "only the indenture trustee and registered 'Holders' have the right to sue on the PIK Notes."  Aliberti Memo at 11; SD Memo at 11.  Indeed, Defendants rely on many provisions from the PIK Indenture to show the Trustee's right to sue on the PIK Notes, including §§ 6.03, 6.05, 6.06, and 6.07.  *Id.*

Notwithstanding, Defendants purport to rely solely on § 6.03 of the PIK Indenture but that section provides that "the Trustee may pursue <u>any available remedy to collect the payment</u> of principal, premium, if any, and interest on the Notes <u>or to enforce the performance of any provision of the Notes or this Indenture</u>."  Stamell Aff., Ex. E at § 6.03).  In suing Defendants to recover loan proceeds under the PIK Notes and PIK Indenture, the Trustee is acting consistent

10

with § 6.03 of the PIK Indenture by pursuing "any available remedy to collect" and enforcing "provision[s] of the Notes or Indenture." *Id.*

Indeed, courts applying New York law hold that fraudulent conveyance claims can be prosecuted by indenture trustees representing noteholders as a group. *Feldbaum v. McCrory Corp.*, 1992 WL 119095, at *7 (Del Ch. 1992) (holding that fraudulent conveyance claims allegedly arising from transactions by issuers of bonds and asserting injuries to bondholders hurt all bondholder-plaintiffs derivatively and "[g]iven the derivative character of these claims, it is clear that they can be prosecuted by the trustees representing the bondholders as a group.") (citing *Continental Illinois National Bank and Trust Co., v. Hunt International Resources Corp.*, Del. Ch., C.A. Nos. 7888, 7844, Jacobs, V.C. (February 27, 1987) (denying motion to dismiss suit by trustee on fraudulent conveyance theory against non-issuer defendants); *Lange v. Citibank, N.A.*, 2002 WL 2005728, at *7 (Del. Ch. 2002) (fraudulent conveyance claims brought by bondholders may be asserted by the indenture trustee). As the court made clear in *Feldbaum*, fraudulent conveyance claims are actions "with respect to" the PIK Indenture and therefore, clearly within the Trustee's authority to pursue upon the request or direction of the noteholders. *See Feldbaum*, 1992 WL 119095 at *7.

In this case, the Trustee's authority to bring this action is mandated by a clear direction from bondholders under the PIK Indenture. Section 6.05 (*Control by Majority*) provides that holders of a majority of outstanding PIK Notes may direct the time, method and place of conducting any proceeding for exercising <u>any remedy available to the Trustee</u>. Stamell Aff., Ex. E at §6.05.) (emphasis added). Here, the Trustee received such a direction from Cortlandt, exercising the rights of the majority of noteholders pursuant to §§ 6.05 and 6.06 of the PIK Indenture to bring this action in New York.

11

In addition, § 7.01 (*Duties of the Trustee*) provides that in the event of default, the Trustee will exercise such rights and powers vested in it by this Indenture, using the same degree of care and skill as a prudent person would exercise or use under the circumstances. *Id.* at §7.01 (emphasis added).  As described above, the Trustee is exercising rights vested in it by the PIK Indenture by acting pursuant to a direction from bondholders (§§ 6.05 and 6.06) to pursue any available remedy to collect payment and enforce the provisions of the PIK Indenture (§ 6.03). By so acting, pursuant to a direction from and on behalf of noteholders, the Trustee is using the same degree of care and skill a prudent person would exercise under the circumstances. Moreover, § 11.04(b) states in part "…the Trustee and/or the Security Agent will have power to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the pledged assets by any acts that may be unlawful or in violation of this Indenture… *Id.* at § 11.04 (emphasis added).  Through this action, the Trustee is seeking to recover fraudulently diverted assets which would be a part of the noteholders' collateral or the proceeds of that collateral.  As such, this action is authorized under § 11.04(b).

Accordingly, the Trustee's authority under the PIK Indenture could not be clearer.  As demonstrated above, the Trustee is authorized under numerous sections of the PIK Indenture including §§ 6.03, 6.05, 6.06, 7.01 and 11.04, as well as applicable authority.  In addition, in this case, the Trustee's actions are mandated by a specific direction from noteholders.  As such, this action is brought with respect to the PIK Indenture and is well within the Trustee's available remedies.

Significantly, Defendants cite to three cases that apply New York law all of which are entirely inapplicable here.[10] Aliberti Memo at 12-13; SD Memo at 12-13. The cases cited do not address an indenture trustee's authority to bring claims pursuant to an indenture. Rather, these cases involve claims against trustees for alleged breaches of duty and address the indenture trustee's standard of care to noteholders before a default. As such, the cases are inapposite here because the post-default standard of care applies.

Defendants cite the cases, including *AG Capital*, for the proposition that an indenture trustee is bound by the terms of the indenture. *Id*. As described in detail above, however, both the express provisions of the PIK Indenture and the Noteholders' direction under the PIK Indenture, authorize the Trustee to act here. Further, *AG Capital* and the other cases cited are inapplicable because the standard of care for an indenture trustee post-default is different than the pre-default standard. *Magten Asset Mgmt. Corp*., 2007 WL 1326795 at *7 (Sup. Ct. N.Y. Cty. 2007) (quoting 15 U.S.C. 77ooo(c)) ("In the case of a default, the trustee 'shall…use the same degree of care and skill…as a prudent man would exercise under the circumstances in the conduct of his own affairs.'"). Defendants fail to address this distinction.

Finally, none of the other cases on which Defendants rely to dispute the Trustee's standing apply New York law.[11] Therefore, pursuant to the terms of the PIK Indenture and

---

[10] *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 156 (2008), *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011), *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988).

[11] *See Regions Bank v. Blount Parrish & Co., Inc.*, 2001 WL 726989 (N.D. Ill. 2001); *Central Bank v. City of Fresno*, 1988 WL 60158 (9th Cir. 1988); *Regions Bank v. Blount Parrish & Co., Inc.*, 2004 WL 3832307 (M.D. Ala. 2004); *Premier Bank v. Tierney*, 114 F. Supp. 2d 877 (W.D. Mo 2000); *Cont'l Bank, N.A. v. Caton*, 1990 WL 129452, *4-7 (D. Kan. 1990). Additionally, Defendants' cases involve securities fraud actions brought by an indenture trustee who was not assigned or directed to take such actions by its bondholders. Aliberti Memo (8686) at 13-14. This is not the case here where the Trustee was directed by a majority of its noteholders pursuant to §§ 6.05 and 6.06 of the PIK Indenture to bring this action in New York. In *Regions Bank*, for example, in finding that the trustee did not have standing under a section similar to § 6.03 here, the court reasoned that Plaintiff did not "point to any other section of the Indenture where the bondholders assigned such claims to it. Without such an assignment in the Indenture, Plaintiff cannot proceed with an action for fraud." *Regions Bank*, 2001 WL 726989, at *5 (emphasis

13

direction of the Noteholders under the PIK Indenture, the Trustee has standing to bring this action.

## II.    Abstention Is Not Warranted and the Court Should Retain its Jurisdiction Over this Case

Defendants contend that the Court should abstain from exercising jurisdiction pursuant to the *Colorado River* Doctrine.  Aliberti Memo at 14-18; SD Memo at 13-17.  As a threshold, *Colorado River* abstention is only appropriate where the federal and state cases "are essentially the same," meaning that "there is an identity of parties, and the issues and relief sought are the same."  *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (quotations omitted).  Once the initial threshold is satisfied, in evaluating whether to abstain under the *Colorado River* Doctrine, federal district courts consider the following six factors.

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101-100 (2d Cir. 2012) (citing *Woodford v. Community Action Agency of Greene Cty, Inc.,* 239 F.3d 517, 522 (2d Cir. 2001)).  However, not one of these factors alone is determinative.  *Colorado River*, 424 U.S. at 818-19.

added); *see also Premier Bank v. Tierney*, 114 F. Supp. 2d 877 (W.D. Mo 2000) (Because the bondholders did not clearly assign such rights to the bank trustee in the indenture, the bank did not have standing to bring this suit).  Indeed, throughout the holding in *Regions Bank*, the court reiterates this distinction – that bondholders did not assign their fraud claims to plaintiff – as cause to deny plaintiff's standing.  *Id.* at *4-7.  As such, these case are inapplicable here where the majority holders directed the Trustee to bring this action on their behalf pursuant to §§ 6.05 and 6.06 of the Indenture.

A. The Threshold for Abstention is Not Satisfied Here Where Parties in the State and Federal Action are Not the Same

There is no identity of the parties because each Defendant in this federal case either has not been served in the State Cases or claims it has not be served.

Aliberti claims he has not been served with process in the State Actions.[12]  Moreover, the Sponsor Defendants have not appeared and were never served with process in the State Actions. "[W]hen dismissal of the federal proceeding would leave a defendant free from *any* proceeding on issues in question, abstention is unwarranted." *DDR Const. Serv., Inc. v. Siemens Indus., Inc.,* 770 F. Supp. 2d 627, 645–646 (S.D.N.Y.2011) (citing *Wells Fargo Century, Inc. v. Hanakis,* 2005 WL 1523788, at *9 (E.D.N.Y. June 28, 2005) (although state and federal actions addressed the same subject matter, the fact that defendant would no longer be part of any action precluded a finding that the two actions were parallel)).  Accordingly, the actions are not parallel as they do not involve identical parties and the Court should not abstain from hearing this case

B. Exceptional Circumstances Do Not Exist Under the *Colorado River* Doctrine to Support this Court's Abstention

Even assuming, *arguendo*, that the State and Federal Actions were parallel, abstention still would not be appropriate because the *Colorado River* factors weigh in favor of this Court's exercise of federal jurisdiction.

i. This Case Does Not Involve the Exercise of Jurisdiction over a Res or Property, and the Federal Forum is Not Inconvenient

It is undisputed in this case that there is no res or property involved over which either court would assume jurisdiction.  It is also undisputed that having the case heard by this federal Court is not inconvenient to the parties given that the state and federal courts are in adjacent

---

[12] *Cortlandt Street Recovery Corp. v. Hellas Telecommunications II, S.C.A., et al.*, No. 653181/2011 (Sup. Ct., N.Y. Cty, 2011); *Cortlandt Street Recovery Corp., et al. v. David Bonderman, et al.*, No. 653357/2011 (Sup. Ct., N.Y. Cty, 2011).

15

buildings.  When the federal court is as convenient as the state court, then this factor supports

retention of the case by the federal court.  *Woodford*, 239 F.3d at 523 (citing *Village of Westfield*

*v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999)); *see also Law Enforcement Ins. Co., v. Corcoran*,

807 F.2d 38, 42 (2d. Cir. 1986).  The absence of a res and the lack of inconvenience in the

federal forum (the first and second *Colorado River* factors) both favor retention of jurisdiction by

the federal court.  *Woodford*, 239 F.3d at 523.

> ii.     Avoidance of Piecemeal Litigation

Defendants argue that "any decision by this Court would have preclusive effect in state

court as to some, but not all of the defendants in the State Court Action.  Thus, this is a 'classic

example' where the danger of piecemeal litigation warrants abstention."  Aliberti Memo at 16;

SD Memo at 15.  However, Defendants fail to explain how a decision involving them in federal

court will have a preclusive effect in state court where they claim they are not subject to

jurisdiction.  Furthermore, "[t]he mere potential for conflicting outcome[s] between the two

actions does not justify abstention under the 'piecemeal litigation' factor."  *Shields v.*

*Murdoch,* 891 F. Supp. 2d 567, 582 (S.D.N.Y. 2012) (quoting *In re Bank of Am. Corp. Secs.,*757

F. Supp. 2d 260, 345 (S.D.N.Y. 2010)); see also *In re Asbestos Litig.,* 963 F. Supp. 247, 253

(S.D.N.Y. 1997).  Defendants also fail to explain how a decision by this Court would have a

preclusive effect on some defendants and not others.

> iii.    The Order in Which the Cases Were Filed and the Status of the Proceedings Do Not
>         Support Abstention

The fourth *Colorado River* factor involves an analysis of the order in which the cases

were filed and the status of the proceedings.  This factor focuses on "how much progress has

been made in the two actions."  *Village of Westfield*, 170 F.3d at 122.  The State Actions were

commenced in November 2011.  Aliberti is the only Defendant that filed motions to dismiss

16

those actions and there is a stay of discovery until decisions are rendered on those motions. Moreover, the parties have yet to appear before the presiding judge in the State Actions and oral argument on the motions to dismiss is scheduled for May 2, 2013.  Correspondingly, this Federal Action was commenced on November 29, 2012.  To date, the parties have exchanged no discovery and have had one status conference call with the Court.

Since neither the Federal Action nor State Actions are proceeding pending resolution of the State and Federal motions to dismiss, progress in the Actions is equal.  Accordingly, this factor is neutral.  *See Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 2013 WL 592672, *8 (S.D.N.Y. Feb. 15, 2013).

iv.     The Law Supplying the Rule of Decision Does Not Favor Abstention

The fifth *Colorado River* factor requires a review of what law provides the rule of decision in the case.  "[T]he absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Village of Westfield,* 170 F.3d at 123-24 (internal quotation marks omitted).  A classic example of where abstention is proper based on this factor is if the case involves "difficult state law issues involving important public policies or [to] avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulations or administration." *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 127 (2d. Cir. 1995).  Plaintiffs' state law claims – payment on the PIK Notes, breach of contract, violation of prohibitions on distributions, alter ego liability, fraudulent conveyance, unjust enrichment, and imposition of a constructive trust – are not novel or complex.  Neither do such claims involve public policies or affect New York's efforts to maintain coherent public policy.  Accordingly, this factor weighs against abstention.  *Id*; *see also Kshel Realty Corp. v. City of N.Y.,* 2003 WL 21146650, at *6 (S.D.N.Y. May 15, 2003).

17

v.        The State Actions Will Not Adequately Protect Plaintiffs' Rights

The last *Colorado River* factor involves whether the state litigation will protect Plaintiffs' procedural and substantive rights and will provide a fair forum to resolve the parties' claims.  As discussed below, the State Actions will not adequately protect Plaintiffs' rights.

Aliberti has filed motions to dismiss the State Actions claiming he was not properly served in those actions.  Although Plaintiffs take the opposite position, Plaintiffs filed these actions to moot any defects in service of process before applicable statute of limitations run since, in contrast to some New York state courts, Federal courts in New York permit individuals located in a country that is a signatory to the Hague Convention to be served by mail so long as that country does not object.  *Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir. 1988); Fed. R. Civ. P. 4(f)(1) and 4(h).  Aliberti was served with papers at his residence in London and the United Kingdom does not object to mail service under Article 10(a) of the Hague Convention. *Guy Carpenter & Co. v. Samengo-Turner*, 2007 WL 1705070, at *3 (S.D.N.Y. June 14, 2007).

Moreover, Plaintiffs attempted to serve the Sponsor Defendants in the State Actions through process servers in the Cayman Islands and British Virgin Islands, but encountered problems with direct service and the Sponsor Defendants were never served in those actions. The Sponsor Defendants were served by mail in the Cayman Islands and British Virgin Islands, both of which are overseas territories of the U.K.  Because this Court permits mail service under the Hague Convention it is a better forum to resolve the parties' claims because the risk of defective service is eliminated.[13]

---

[13] Defendants cite *Garcia v. Tamir*, 1999 WL 587902 (S.D.N.Y. 1999) for the proposition that these actions are duplicative, vexatious and sanctions should be imposed against Plaintiffs.  Aliberti Memo at 15-16; SD Memo 15-16.  *Garcia*, however, did not address service of process issues.  Rather, the case involved Fair Labor Standard Act claims in which plaintiffs sought to take advantage of the federal statute's double recovery provision while evading other federal statutes. *Id.* at *9.  By contrast, Plaintiffs want to moot service of process issues and do not seek to evade any federal statute.  PNC ¶ 19.

**III.    This Court has Personal Jurisdiction over Aliberti because the Forum Selection Clause in the Indenture Provides for Jurisdiction in a Court in New York and for Application of New York Law**

Section 14.09 of the PIK Indenture contains a mandatory forum selection clause.  The Issuer thereby "irrevocably" submits to personal jurisdiction of courts in New York County for lawsuits "arising out of, based on, or relating to" the "Notes, this Indenture or the transactions contemplated hereby," stating:

> "The Issuer irrevocably (i) agrees that any legal suit, action or proceeding against the Issuer or any Guarantor arising out of, based on, or relating to the Notes, this Indenture or the transactions contemplated hereby may be instituted in any U.S. Federal or state court in the Borough of Manhattan in the City of New York and (ii) waives, to the fullest extent it may effectively do so, any objection which it may have now or hereafter have to the laying of venue of any such proceeding."[14]

Section 14.08 of the Indenture makes the law governing the PIK Indenture, PIK Notes and Guarantees New York law.[15]  *See* Stamell Aff., Ex. E at §14.08.

This forum selection clause moots Aliberti's challenge to jurisdiction and to forum non conveniens.  *See* N.Y. G.O.L. 5-1402 and CPLR 327(b).  If a court concludes that a forum selection clause is valid, "it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *American Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. American Boat Co., LLC,* 2012 WL 527209, at *2 (S.D.N.Y.

---

[14] Section 14.09 also separately states: "The Issuer has appointed CT Corporation System . . . New York, New York, 10011, USA as its agent (the *"Authorized Agent"*) upon whom process may be served in any actions arising out of, based on, or relating to the Notes, this Indenture or the transactions contemplated hereby . . . brought in any U.S. Federal or state court located in the Borough of Manhattan in the City of New York, expressly consent to the jurisdiction of any such court in respect of any such action, and waive any other requirements of or objections to personal jurisdiction with respect thereto."  (Emphasis added.)

[15] Section 14.08 states:  "THE INTERNAL LAW OF THE STATE OF NEW YORK WILL GOVERN AND BE USED TO CONSTRUE THIS INDENTURE, THE NOTES AND GUARANTEE WITHOUT GIVING EFFECT TO THE APPLICABLE PRINCIPLES OF CONFLICTS OF LAW TO THE EXTENT THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION WOULD BE REQUIRED THEREBY."

19

2012) (citing *Export-Import Bank of the U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y. 2010)).

The strong presumption is to enforce such forum selection clauses. *Antares Mgmt. LLC v. Galt Global Capital, Inc.*, 2013 WL 1209799, at *4 (S.D.N.Y. 2013). Forum selection clauses are crucial to ensuring predictability in contract formation. *In re Refco Inc., Sec. Litig.,* 2009 WL 5548666, at *5 (S.D.N.Y. 2009).

A. Aliberti is Bound by the Forum Selection Clause because he is a Signatory to the PIK Indenture

Aliberti first argues that he is not bound to the forum selection clause because he is a non-signatory to the PIK Notes and Indenture in his individual capacity. Aliberti Memo at 21. Aliberti signed the PIK Notes as a "duly authorized officer" of Hellas Finance and Hellas II. PNC ¶ 52. Case authority is clear that Aliberti is personally liable for the fraud perpetrated by the Issuers on whose behalf he signed. Corporations act through live, breathing human beings, and their officers, directors and agents are liable for fraud if they participate in it or have actual knowledge of it. *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 400 (S.D.N.Y. 2004). Here, Aliberti knew everything related to the fraudulent transfers. Aliberti is a senior Apax partner who led the acquisition of the company that he used as a vehicle to borrow money, the proceeds of which he paid to Apax in which he is a senior official, as well as its partners and investment funds. New York exercises personal jurisdiction over corporate officers who, like Aliberti, were "primary actors" in an illegal transaction. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 470 (1988).

Aliberti further argues that he is not bound by the forum selection clause because he is not a beneficiary of the PIK Notes or closely related to the Hellas entities who issued the PIK Notes. Aliberti Memo at 21-22. To the contrary, however, Aliberti was the key player who

20

represented Apax in managing the PIK Note transaction and signed documents that implemented the fraudulent conveyances, including, but not limited to, the Redemption Agreements to pay €973,657,610 for CPECs, a value of €35 each versus €1 par value per CPEC, on behalf of Hellas, Hellas Telecommunications I, S.á.r.l., and the Sponsor Defendants listed as owners of Hellas in the Offering Memorandum.  Stamell Aff., Ex. A at 156.  Aliberti is also listed as Hellas's managing director in various Luxembourg statutory filings.

Moreover, as alleged in the Amended Complaint, Aliberti was paid some of the loan proceeds and benefitted from transferring the loan proceeds out of the companies in whose name the loans were made.  PNC ¶ 52.  Aliberti acted as an agent for Hellas Finance, Hellas, and the Sponsor Defendants.  The multiple roles he played demonstrate, and the loan proceeds he received show, that he benefited from and is closely related to the fraudulent transactions, and therefore, is personally bound by the forum selection clause as a signatory.  *See* Stamell Aff., Exs. B, C, E.

Even assuming, *arguendo,* that Aliberti was a non-signatory to the Indenture, he is still bound by the forum selection clause as a non-signatory for the reasons stated below.

## IV.    This Court has Personal Jurisdiction over the Defendants because they Directly Benefitted from the Loans and are Closely Related to the Signatories

The Sponsor Defendants concede that the forum selection clause in the Indenture is valid and applicable to the related cases.  SD Memo at 21.  They argue only that they did not have a sufficiently close relationship to Hellas Finance for the clause to be enforced against them.  *Id.* at 20.  To the contrary, the Sponsor Defendants were intimately close to Hellas Finance, so close that Hellas Finance and Hellas II borrowed €1.5 billion from investors and immediately transferred those loan proceeds to Sponsor Defendants.  Aliberti signed the PIK Notes and Indenture as an agent for Hellas Finance, as well as the transaction documents that transferred

21

the loan proceeds to the Sponsor Defendants.  Although non-signatories, the Sponsor Defendants

(and Aliberti if he is deemed a non-signatory) are bound by the forum selection clause.[16]

Judge Griesa's recent decision in *Antares Mgmt. LLC v. Galt Global Capital, Inc.*, 2013

WL 1209799 (S.D.N.Y. 2013) is one of many by New York courts recognizing a wide range of

relationships as sufficiently close to bind a non-signatory to a forum selection clause.  *See*, *e.g.*,

*LaRoss Partners LLC v. Contact 911 Inc.,* 2012 WL 2856099, at *3 (E.D.N.Y. 2012) (parties

were closely related where signatory and nonsignatory shared officers and directors).[17]  Such

close relationships include where the non-signatory:  (i) benefits from the agreement; (ii) owns or

controls one or more of the signatories; (iii) is the alter ego of one for more of the signatories;

and/or (iv) is a party to related transactions that are components of the same global transaction as

the agreement containing the forum selection clause.  Each of these four types of sufficiently

close relationships is adequately alleged here between Hellas and the Sponsor Defendants and,

therefore, the forum selection clause is fully enforceable against the Sponsor Defendants.

Direct Benefit Rule:  Also called the "estoppel" or third party beneficiary principle, the

direct benefit is the loan proceeds that were transferred to the Sponsor Defendants as a dividend.

A party is estopped from denying a contract provision when it has directly benefitted from the

---

[16] For these reasons, the Sponsor Defendants do not and cannot dispute that the terms of the Indenture, including the forum selection clause, were "communicated" to them.  *See Antares Mgmt. LLC v. Galt Global Capital, Inc.*, 2013 WL 1209799, at *5 (S.D.N.Y. 2013).

[17] *See also Universal Grading Serv. v. eBay, Inc.*, 2009 WL 2029796, at *15, 17 (E.D.N.Y. 2009) (non-signatory co-defendants were closely related where plaintiffs' claims arose out of the same alleged conspiracy between the defendants and plaintiffs' claims were substantially identical with regard to each defendant); *MGM Studios Inc. v. Canal Dist. S.A.S.*, 2010 WL 537583, at *5 (S.D.N.Y. 2010) (plaintiff may invoke the forum selection clause against defendants that are closely related to signatory); *Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC*, 2003 WL 22882137, at *5-6 (S.D.N.Y. 2003) (chief financial officer who had a duty to comply with federal securities law was closely related to stock purchase transaction such that is was foreseeable that she would be bound by forum selection clause); *Weingrad v. Telepathy, Inc.*, 2005 WL 2990645, at *5-6 (S.D.N.Y. 2005) (non-signatory defendants were closely related where plaintiff alleged they acted in concert and its claims against the signatory and non-signatory defendants were substantially identical and arose out of the defendants' relationships with each other).

contract. *American Boat,* 2012 WL 527209 at *5) ("Under the direct benefits theory of estoppel, defendant was estopped from arguing it was not subject to the forum selection clause.").

Ownership and Control:  The Sponsor Defendants directly and indirectly owned Hellas, and operated and controlled Hellas by virtue of their ownership, as illustrated by the shareholders' agreement in which Apax and TPG chose the executives who ran Hellas.  Stamell Aff., Ex. A at 156-157.  A non-signatory to a contract is sufficiently "closely related" to the dispute when "enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011) (citing *Direct Mail Prod. Servs. Ltd., v. MBNA Corp.,* 2000 WL 1277597, at *3 (S.D.N.Y. 2000)).  Although the Sponsor Defendants argue that they are not identified in the forum selection clause, that "does not preclude application of the 'closely related' doctrine, which exists precisely because there are some situations where courts believe that parties who are not signatories to such a clause should nonetheless be bound by that clause." *Magi XXI Inc. v. Stato Della Citta Del Vaticano,* 818 F. Supp. 2d 597, 609 (E.D.N.Y. 2011) (citation omitted).

Alter Ego:  The Hellas entities were a group of shell companies with no business and no net worth.  Hellas Finance was the alter-ego of Sponsor Defendants whose executives, including Aliberti, signed the PIK Notes and Indenture and used Hellas Finance to borrow money siphoned off as a dividend.  In fact, of the €1.5 billion Hellas Finance borrowed, none of it was ever repaid and none of the loan proceeds were utilized by Hellas II to operate a business.  Since there is no distinction between Hellas Finance and the Sponsor Defendants, the Sponsor Defendants are bound by the forum selection clause. *In re Parrish*, 246 A.D.2d 449 (1st Dep't 1998) (signatory

23

and non-signatory were alter egos of each other with interlocking structures and non-signatory was bound to the agreement).

Global Transaction:  Parties to a global transaction who are not signatories to specific agreements may nonetheless be bound by a forum selection clause if such an agreement was executed at the same time as other agreements, by the same parties or for the same purpose. *Freeford Ltd. v. Pendleton*, 53 A.D.3d at 32, 39 (1st Dep't 2008).  The "global transaction" does not require "absolute identity of all signatories to the individual component agreements."  *Id.* The PIK Notes, Indenture, and Redemption Agreements were all executed by the Defendants on the same day and for the same purpose, which was to borrow money as Hellas Finance and put that money into the pockets of the Sponsor Defendants.  As a result, the Sponsor Defendants are bound by the forum selection clause.  *Indosuez Int'l Fin. B.V. v. National Reserve Bank*, 98 N.Y.2d 238, 246-48 (2002).

## V.      Dissolution of a Company is no Impediment to its Liability to Creditors for Unpaid Debts under Either Cayman or BVI Law

The Sponsor Defendants assert that they cannot be sued for unpaid liabilities because they do not exist.  SD Memo at 17-19.  Ironically, it is the allegedly dissolved Sponsor Defendants themselves making the argument that they do not exist:  two dissolved Cayman limited partnerships and two dissolved British Virgin Island companies.  These four entities represent 18% of €1.5 billion borrowed in the name of Hellas Finance and Hellas II.  Stamell Aff., Ex. A at 156.  Courts do not permit such bare attempts to manipulate corporate existence to evade liability.  Well established law, settled over 130 years ago, makes a dissolved company subject to suit for breach of contracts, torts and other claims arising before dissolution. *Meriwether v. Garrett*, 102 U.S. 472, 529 (1880) (obligations of a dissolved entity made while in existence survive and may be enforced by a court of equity).  More recently, in *Tedesco v. A.P.*

24

*Green Indus., Inc.*, 8 N.Y.3d 243, 248 (2007), the Court of Appeals held that dissolved or inactive companies may be sued, explaining that the right to sue a dissolved company is essential to prevent deadbeat debtors from obtaining a windfall from its creditors:

> If the statute were read to preclude all suits on claims not ripe at the time of dissolution, it would produce anomalous results.  For example, a debt to a dissolved corporation that became due on the day after dissolution would be uncollectible, and the debtor would receive a windfall.  *Id.*

Accordingly, after dissolution, an entity exists for purposes of winding up its affairs and suits may be brought against it.

A.  <u>The Cayman Sponsor Defendants may be Sued</u>

The Cayman exempted limited partnerships, TCW Defendants organized in Cayman, argue they are not subject to suit, relying on Cayman law.  SD Memo at 18.  But they do not submit any case law or statute to support the argument.  Rather, the affidavit they submit of the Cayman lawyer reports that the partnerships and general partners dissolved and he asserts they cannot be sued.  Butler Affidavit ¶¶ 9-11.

In 2007, the time of the alleged dissolution, the operative Cayman statute in effect was the Exempted Limited Partnership Law (2007 Revision).  Stamell Aff., Ex. F.  Paragraph 3 states that Cayman Partnership Law (2002 Revision) applies to an Exempt Limited Partnership.  *Id* at 6.  Section 52(5) of the Partnership Law requires that, before dissolving, a partnership may not distribute capital to its partner, unless all other creditors are fully paid.  Section 52(5) states:

> In the event of the dissolution of a limited partnership its affairs shall, unless the court otherwise orders, be wound up by the general partners; and no limited partner shall, under any circumstances, be allowed to withdraw any part of his capital, or to claim as a creditor, until the claims of all the other creditors of the partnership, and all charges thereon, have been fully paid or satisfied.

*Id.*, Ex. G at 18.  Nothing in Cayman law bars a suit against these companies based on their violation of Cayman law in failing to satisfy their liabilities prior to dissolution.

25

The alternative argument the TCW Defendants make is that a partnership may not be sued in the partnership's name.  Butler Aff., ¶ 9.  Under Federal Rule of Civil Procedure 17(b), a partnership may be sued in its common name both to enforce a federal right and if state laws so provide.  New York CPLR § 1025 provides that a partnership may be sued in the partnership's name.

B.  The BVI Sponsor Defendants may be Sued

The British Virgin Island ("BVI") companies, Hellas Telecommunications Co-Invest Ltd. and Hellas Telecommunications Employee Ltd., argue that they may not be sued, relying on an affidavit of a BVI lawyer.  SD Memo at 19.  In that affidavit, Mr. Briant relies upon § 208 of the BVI Business Companies Act, 2004, which provides that upon completion of a voluntary liquidation, a company is struck from the register of companies and a certificate of dissolution is issued and effective from the date of issuance.  Briant Aff., ¶ 8.  Mr. Briant stops there with his statutory analysis and relies on a 1932 House of Lords decision to establish that a dissolved company may not be sued.  *Id.* at ¶ 11.  The BVI Business Companies Act, however, continues and, in §215(3) states:

> The fact that a company is struck off the Register does not prevent (a) the company from incurring liabilities; or (b) any creditor from making a claim against the company and pursuing the claim through to judgment or execution; and does not affect the liability of any of its members, directors, officers or agents.

Stamell Aff., Ex. H at § 215(3).

This authorization for a creditor to make a claim against the company and pursue it to judgment and execution is what contemporary corporate statutes provide.  *In re Kraft-Murphy Company, Inc.,* 2011 WL 5420808 (Del. Ch. 2011).  In *Kraft-Murphy*, the court in that case explained that although under common law dissolution of a corporation was its "civil death,"

26

state legislatures enacted various statutory systems to provide mechanisms by which corporations can continue to be sued during and after the winding up of their business. *Id.* at \*6. Section 215(3) is BVI's statutory solution which protects creditors' rights. Although Mr. Briant overlooked § 215(3) in the contemporary BVI Company Law, he managed to find and cite a 1932 decision by the English House of Lords that has nothing to with modern day companies law and international law.[18]  Briant Aff., ¶ 11.

## VI.    New York is a Convenient and Appropriate Forum

The Defendants moved to dismiss this action under the doctrine of "forum non conveniens." The Second Circuit has a three step inquiry to determine whether a case should be dismissed based on forum non conveniens. The first step is to determine the degree of deference that should be afforded the plaintiffs' choice of forum. The second step is to consider whether the defendant's alternative forum is adequate to adjudicate the parties' dispute. If the defendant's alternative forum is adequate, the last step is for the court to balance the private and public interests implicated by the selected forum. *Iragorri v. United Techs. Corp* ., 274 F.3d 65, 73-74 (2d Cir. 2001); see also *Skanga Energy & Marine Ltd.,* 875 F. Supp. 2d  264, 272 (S.D.N.Y. 2012) (citing *Norex Petroleum Limited v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).

Before Plaintiffs perform the three step analysis discussed above, it is important to note that through this action, Plaintiffs seek to enforce rights based on, related to and arising from the

---

[18] *Lazard Bros & Co. v. Midland Bank, Ltd.,* 4 ([1932] All ER Rep 571) is fascinating from a historical point of view.  It involved the Bolshevik Revolution and the nationalization of the banking system by a nascent Soviet Union.  It has nothing to do, however, with post World War II companies law and international law generally which takes a dim view of the nationalization of private businesses.  Nonetheless, the fact that the only decision that Mr. Briant was able to find would be one that takes us back to the birth of communism, together with overlooking §208(3), makes the argument so weak as to confirm that Plaintiffs' service on the BVI dissolved companies is good service and that they will be held responsible for the loan proceeds each received.

PIK Notes and Indenture that contain New York choice of law and forum selection clauses. The presence of a forum selection clause in a forum non conveniens analysis is "'a significant factor that figures centrally in the district court's calculus.'" *IDT Domestic Telecom, Inc. v. Estrella Telecom, Inc.*, 2010 WL 1047648, at *1 (S.D.N.Y. 2010) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Defendants completely ignore the forum selection clause and choice of law provision in the PIK Notes and Indenture, which states that New York law should govern.

A.  Deference Should be Given to Plaintiffs' Choice of Forum

Usually, the greatest deference is afforded to a plaintiff's choice of its home forum. According to the Supreme Court of the United States, "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); see also *Norex*, 416 F.3d at 154. A defendant bears a "heavy burden" for dismissal based on forum non conveniens and there is a strong presumption in plaintiff's choice of forum that should rarely be disturbed. *Skanga*, 875 F. Supp. 2d at 272. This is so because a plaintiff's choice of its home forum "is presumed to be convenient." *Norex*, 416 F.3d at 154 (citing *Iragorri*, 274 F.3d at 71).

Cortlandt is a New York corporation with its principal place of business in New York and Wilmington Trust Company is a Delaware corporation with its principal place of business in Delaware. Therefore, in an international context, it is undisputed that this case is located in the Plaintiffs' home forum – the United States. Deference should be afforded to the Plaintiffs' choice of their home forum as opposed to the proposed alternative forums of England or Luxembourg. Plaintiffs chose to commence litigation in New York based on its convenience and based on the forum selection clause in the PIK Notes and Indenture.

28

B. <u>Defendants Failed to Prove the Alternative Forums are Adequate</u>

Defendants bear the burden to demonstrate the availability of adequate alternative forums in order to dismiss an action on grounds of forum non conveniens. *See Norex*, 416 F.3d at 157 (citing *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002)). If Defendants fail to carry this burden, the forum non conveniens motion "must be denied regardless of the degree of deference accorded plaintiff's forum choice." *Id*. (citing *PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 73 (2d Cir. 1998)). An alternative forum is adequate if the defendants are amenable to service of process there, and if the forum permits litigation of the subject matter of the dispute. *Id*. (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)).

Aliberti's proposed alternative forums are Luxembourg and England. In support of these proposed forums, Aliberti merely states that "U.S. courts have recognized, both Luxembourg and England have sophisticated legal systems capable of resolving complex commercial disputes" and that Luxembourg is an adequate forum based on the Hellas II liquidators' decision to bring suit there. Aliberti Memo at 22-23. The Sponsor Defendants make the same argument for Luxembourg. SD Memo at 22. Although the Hellas II Liquidators[19] have commenced litigation in Luxembourg, that litigation does not consist of actions to enforce the PIK Notes and the Indenture, and therefore, the existence of these actions is not relevant. Defendants failed to actually address the nature of the claims, the availability of these causes of action in England or Luxembourg, whether the other defendants are amenable to service of process in Luxembourg or England, or whether the statute of limitations has run in these alternative forums. *See Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001)

---

[19] Carl Jackson and Andrew Hosking of RSM Tenon Recovery Limited.

("an adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum."). Therefore, Defendants failed to prove the adequacy of these alternative forums, and Defendants' unsupported allegations do not outweigh the deference provided to the Plaintiffs' choice of forum and the forum selection clause.

    C.   Balancing the Private and Public Interests Favors the Plaintiffs' Choice Forum

If the movant seeking dismissal fails to prove that the alternative forum is adequate, then the motion to dismiss on forum non conveniens grounds should be denied without consideration of the third step of the analysis. *Norex*, 416 F.3d at 160 (citing *PT United Can Co.*, 138 F.3d at 73). However even if a defendant proves the existence of an adequate alternative forum, "the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri*, 274 F.3d at 74-75. Defendants failed to demonstrate that the alternative forums are adequate, and also failed to show that the choice forum is genuinely inconvenient and that Luxembourg and England are significantly preferable.

    i.      The "Private Interest" Factors Support Plaintiffs' Choice of Forum

The private interest factors relate to the "convenience of the litigants," and such factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; … and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 74 (citing *Gulf Oil Corp.*, 330 U.S. at 508). This Court must compare the hardship the Defendants would suffer through the retention of jurisdiction, to the hardships Plaintiffs would suffer as the result in the dismissal and the obligation to bring this action in either England or Luxembourg. *See id.*

Defendants claim that the "private interests" support dismissal because substantially all of the witnesses and relevant documents are located in Luxembourg.  However, Defendants fail to set forth the witnesses in Luxembourg with relevant knowledge and evidence, the substance of their testimony, or the documents in Luxembourg that cannot be scanned or copied and provided in New York.  Defendants' counsel's conclusory statement of unnamed individuals "located in Luxembourg or elsewhere in Europe" (Fischler Aff., ¶ 13) fails to satisfy Defendants' burden to show inconvenience.  *IDT Domestic Telecom*, 2010 WL 1047648 at * 2 ("a party moving to transfer on the ground that witnesses will be inconvenienced is obliged to name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum") (quoting *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F. Supp. 1314, 1321 (S.D.N.Y.1989) (internal quotations omitted)).

Additionally, Defendants are affiliated with worldwide organizations with offices in New York and there is no greater burden in being in court in New York than anywhere else in the world. *Eclaire Advisor Ltd. as Trustee to Daewoo Int'l (Am.) Corp. Creditor Trust v. Daewoo Eng'g & Const. Co., Ltd.*, 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005).  Moreover, suits that are global in nature involve parties from different countries and contacts with multiple forums.  Although litigating in New York may be a burden for one party, it does not make another forum more convenient.[20]

Furthermore, there are three bankruptcy proceedings pending in the Southern District of New York brought on behalf of Hellas II by the Liquidators as well as creditors of Hellas II and

---

[20] *See International Equity Inv., Inc. v. Cico,* 427 F. Supp. 2d 503, 506 (S.D.N.Y. 2006) (denying defendant's motion for forum non conveniens even though parties resided in difference countries and witnesses were located in New York, Brazil, and Italy); *Haywin Textile Products, Inc. v. International Finance Inv.*, 137 F. Supp. 2d 431, 437 (S.D.N.Y. 2001) (defendant failed to satisfy requirements for forum non conveniens dismissal even though parties were from different countries).

31

Hellas Finance.[21]  These bankruptcy proceedings further support New York as the convenient

forum to litigate all related cases.[22]

Defendants also allege that because foreign law may apply, this supports the use of a

foreign forum.  However, the application of foreign law, if required at all, does not make New

York an inconvenient forum.  *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996)

("it is well-established that the need to apply foreign law is not alone sufficient to dismiss under

the doctrine of forum non conveniens.") (quoting *R. Maganlal & Co. v. M.G. Chem. Co., Inc.*,

942 F.2d 164, 169 (2d Cir. 1991)).  Additionally, Defendants do not identify any particular

Luxembourg law they claim applies and fail to explain how it may differ (if at all) from New

York law.[23]

ii.      The "Public Interest" Factors Support Plaintiffs' Choice of Forum

The public interest factors here also indicate that this case should remain in the Southern

District of New York.  According to the Second Circuit, "[t]here is an appropriateness, too, in

having the trial of a diversity case in a forum that is at home with the state law that must govern

the case, rather than having a court in some other forum untangle problems in conflict of laws,

and in law foreign to itself."  *Iragorri*, 273 F.3d at 74 (quoting *Gulf Oil Corp.*, 330 U.S. at 508-

---

[21] *In re Hellas Telecommunications (Luxembourg) II SCA*, No. 12-10631-mg (Bankr. S.D.N.Y. 2012); *In re TPG Troy, LLC*, No. 12-14965-mg (Bankr. S.D.N.Y. 2012); *In re T3 Troy, LLC*, No. 12-14966-mg (Bankr. S.D.N.Y. 2012).

[22] *See Bank Hapoalim (Switzerland) Ltd*, 26 A.D.3d at 288 (1st Dep't 2006) (reversing lower court's grant of defendant's motion to dismiss for forum non conveniens since related bankruptcy litigation was occurring in the Southern District of New York); *Rostuca Holdings, Ltd. v. Polo*, 246 A.D.2d 475 (1st Dep't 1998) (affirming lower court's denial of defendant's motion to dismiss for forum non conveniens since parallel litigation involving the same course of conduct was completed in the Southern District of New York and relevant discovery was available in New York).

[23] In addition, there is no conflict of law nor do Defendants identify any such conflict.  In the absence of a conflict of law, there is no conflict of law analysis to apply, and New York, as the forum, is to apply its own law.  *Wells v. Shearson Lehman/Am. Exp., Inc.*, 72 N.Y.2d 11, 18, 530 N.Y.S.2d 517, 521 (1988) (no need to apply conflict of law principles when the same result was reached under New York and Delaware law).

09).  In the instant case, New York law governs this case pursuant to the PIK Notes and the Indenture.  Therefore, having this Court rule over this diversity case is more appropriate than having an English or Luxembourg court preside over the matter.

Additionally, New York rules and policy *require* courts to hear disputes involving more than $1 million that are subject to New York forum selection and choice of law provisions.  N.Y. C.P.L.R. ¶ 327(b).  Here, there is a valid forum selection clause in the Indenture chosen by Defendants that subject them to jurisdiction in New York.  This fact alone heavily supports New York as the proper forum to hear these disputes.  *Domestic Telecom,* 2010 WL 1047648, at *4.

### CONCLUSION

The Court should deny Defendants' motions to dismiss.[24]

Dated:    New York, New York
          April 25, 2013

/s/ Jared B. Stamell_____
Jared B. Stamell
Andrew R. Goldenberg
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
Telephone: (212) 566-4047
Facsimile:  (212) 566-4061
E-Mail: stamell@ssnyc.com
E-Mail: goldenberg@ssnyc.com

*Attorneys for Plaintiff Cortlandt Street Recovery Corp. and Special Litigation Counsel to Wilmington Trust Company*

---

[24] If the Court concludes there are any defects or deficiencies in the Amended Complaint, Plaintiffs request the opportunity to amend.

33