```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
  CORTLANDT STREET RECOVERY CORP.;                                       :
  WILMINGTON TRUST COMPANY, as trustee,                                  :
                                                                         :
                             Plaintiffs,                                 :
                                                                         :
              -against-                                                  :   12 Civ. 8686 (JPO)
                                                                         :
  GIANCARLO ALIBERTI;                                                    :   OPINION AND ORDER
  HELLAS TELECOMMUNICATIONS, S.À.R.L.;                                   :
  HELLAS TELECOMMUNICATIONS CO-INVEST LTD.;                              :
  HELLAS TELECOMMUNICATIONS EMPLOYEES LTD.;                              :
  TCW HT CO-INVEST I L.P.;                                               :
  TCW HT CO-INVEST II L.P.,                                              :
                                                                         :
                             Defendants.                                 ;
                                                                         ;
------------------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

Plaintiffs allege that Defendants defrauded them and other creditors out of €1.5 billion through a financial fraud known as a bleed-out. Plaintiffs filed this action on behalf of some of Defendants' creditors, asserting multiple state law claims under federal diversity jurisdiction. Defendants have moved to dismiss the complaint for lack of complete diversity. For the reasons that follow, Defendants' motion is granted.

**I.     Background**

This case involves a series of financial transactions, the details of which are, for the most part, irrelevant to this decision. A summary of the allegations about those transactions is set forth below to provide context for the facts and procedural history relevant to the Court's decision.

This case is about a series of notes issued during the course of a large financial fraud. Defendants are just a few of many investors that collectively defrauded a group of noteholders through a scheme known as a bleed-out. (Am. Compl. ¶¶ 20, 51 (Dkt. No. 29).) Defendants in this case fall into two groups. One group of Defendants consists of some of the companies that were used as tools to borrow money and then transfer the money to private investors. These companies are Hellas Telecommunications S.à.r.l. and two of its subsidiaries, Hellas Telecommunications Co-Invest Ltd. and Hellas Telecommunications Employees, Ltd. (together, the "Hellas Defendants"). The other group of Defendants consists of two of the private investors that actually gained money from the bleed-out. These Defendants are TCW HT Co-Invest I, L.P., and TCW HT Co-Invest II, L.P. (together, "TCW").[1] This opinion refers to the entire group of investors that benefitted from the bleed-out, including TCW, as the "private investors." The opinion refers to the entire group of companies the private investors used for their scheme, including the three Hellas Defendants, as "Hellas" or the "Hellas companies."

The private investors conspired together to borrow money in Hellas's name and then transfer that money to themselves. First, the private investors acquired a healthy company. They began that process by incorporating three Hellas companies in Luxembourg. (*Id.* ¶ 67.) The private investors used these Hellas companies to acquire a corporation that, in turn, was used to acquire 81% of the interest in TIM Hellas, a profitable Greek cell phone company. (*Id.* ¶¶ 64–

---

[1] Giancarlo Aliberti also belongs in this group of Defendants, but the claims against him have been dismissed.

69.) Acquiring this interest in TIM Hellas cost about €1.1 billion, but the private investors spent just €50 million of their own assets and borrowed the remainder of the funding.[2] (*Id.* ¶ 70.)

The private investors then used the healthy company to transfer money to themselves in the following way. First, the investors issued themselves equity certificates—security interests in the Hellas companies. (*Id.* ¶¶ 71–75.) By the terms of these equity certificates, the Hellas companies could not pay the private investors to redeem the certificates unless Hellas had funds available to pay off all its other debts. (*Id.* ¶¶ 75, 81–86.) After the private investors issued themselves the equity certificates, they borrowed more than a billion euros in the Hellas companies' names.[3] (*Id.* ¶¶ 87–93.) The private investors induced others to lend money to the Hellas companies by promising to pledge their equity certificates—the private investors' own interest in Hellas—as collateral. (*Id.* ¶¶ 1, 92.) But the private investors never pledged their equity certificates as collateral. Instead, the same day that the Hellas companies received the loan proceeds, the private investors had the Hellas companies buy out their equity certificates. (*Id.* ¶¶ 1, 4, 93–97.) In other words, the private investors promptly transferred the loan proceeds to themselves. More than €1.1 billion flowed to the private investors as a result of these transactions; accounting for the par value of the equity certificates, the private investors received a €946,285,000 "dividend." (*Id.* ¶¶ 3, 94.) But there were no profits to dividend—the money distributed to the private investors had been borrowed. (*Id.*) This distribution was in violation of the terms of the equity certificates. The Hellas companies were left with a deficit of more than a

---

[2] The private investors eventually acquired the remaining 19% interest in TIM Hellas. (Am. Compl. ¶ 76.) They also acquired a second Greek cell phone company, Q-Telecom. (*Id.* ¶¶ 79–80.)

[3] Cortlandt filed this suit to collect on €130,770,266 of the €200 million series of notes issued by Hellas Telecommunications Finance on December 21, 2006. (Am. Compl. ¶¶ 13, 92–93.)

billion euros. (*Id.* ¶ 99–104.) The companies have since defaulted on their debts. (*Id.* ¶¶ 57–63.)

The noteholders who own the Hellas companies' debts claim that they were defrauded. But this action is not brought in the name of the noteholders; it is brought in the name of Wilmington Trust Company[4] and Cortlandt Street Recovery Corporation. Cortlandt is a self-described "recovery corporation" that has power of attorney to "collect principal and interest due and to pursue all remedies in its own name" with respect to the notes at issue in this case. (*Id.* ¶ 13; Healy Decl. Ex. N ("Form Assignment") (Dkt. No. 59-14).) There is no evidence that Cortlandt has any independent interest in recovering the noteholders' money. The form assignment executed by the noteholders specifies that they retain the underlying right to their money; Cortlandt is merely enforcing their right. (Form Assignment at 4–5 ("The Noteholder remains the owner of the Notes and person in whose name the Notes are registered. The Noteholder hereby irrevocably appoints [Cortlandt] its true and lawful attorney and proxy . . . to pursue . . . all remedies with respect to the Notes . . . . [C]ounsel retained by [Cortlandt] . . . will be undertaking to represent [the noteholder's] interests through [Cortlandt].").) Cortlandt filed a

---

[4] The operative complaint alleges very little about Wilmington Trust Company. The company is a trustee appointed pursuant to an agreement under which the relevant notes were issued. (Am. Compl. ¶¶ 10, 113.) The trust res is presumably the notes themselves, and the beneficiaries are presumably the noteholders—but none of these facts have been alleged. More importantly, the operative complaint alleges that Wilmington Trust Company is not in control of the litigation, which has implications for its status as a real and substantial party to this controversy. (*Id.* ¶ 15 ("Cortlandt is authorized . . . to direct the Trustee to join on behalf of the Noteholders the suit commenced by Cortlandt.").) *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980) (quoting *McNutt v. Bland*, 43 U.S. 9, 13–14 (1844) (describing "naked trustee" as one who "cannot prevent the institution or prosecution of the suit, nor has he any control over it")). Because the Court holds that the noteholders' citizenship controls over Cortlandt's citizenship, thus destroying complete diversity, it is not necessary to analyze whether the citizenship of Wilmington Trust Company should control for purposes of diversity jurisdiction.

lawsuit to collect on the notes the day before it was incorporated.  (Healy Decl. Exs. I, K (Dkt. Nos. 59-9, 59-11).)

Cortlandt and Wilmington Trust Company filed this suit against the Hellas Defendants and TCW, alleging multiple state law claims under federal diversity jurisdiction.  (Am. Compl. ¶ 7.)  The operative complaint alleges that Cortlandt is a citizen of New York and Wilmington Trust Company is a citizen of Delaware.  (*Id.* ¶ 10.)  The noteholders who assigned a power of attorney to Cortlandt, however, are all foreign citizens.  (*Id.* ¶ 14.)  Defendant Hellas Telecommunications S.à.r.l. is also a foreign citizen.  (*Id.* ¶ 18(c).)  Plaintiffs have been unable to determine whether the remaining Defendants are citizens of any state in the United States, but they do allege that all of the remaining Defendants are foreign citizens. (*Id.* ¶ 18.)  Hellas Telecommunications S.à.r.l., and, separately, the remaining Defendants, have moved to dismiss this action because the parties are not completely diverse.  (Dkt. Nos. 46, 57.)

## II. Discussion

### A. Legal Standard

A motion to dismiss the complaint for lack of subject matter jurisdiction arises under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Motions under Rule 12(b)(1) may attack either the sufficiency or the truth of the allegations supporting subject matter jurisdiction.  *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002).  *See generally* Wright & Miller, Fed. Prac. & Proc.: Civ. 3d § 1350.  When a defendant attacks the truth of the allegations, the Court may consider competent evidence outside the pleadings.  *Giammatteo v. Newton*, 452 Fed. App'x 24, 28 (2d Cir. 2011) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  The plaintiff must demonstrate subject matter jurisdiction by a

preponderance of the evidence.  *Id.* (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

      **B.**      **Diversity Jurisdiction**

Inferior federal courts have the power to decide only those cases that fall within the subject matter jurisdiction conferred on the courts by Congress.  *See Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 321–22 (2d Cir. 2001) (quoting *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir. 1998)).  Plaintiffs claim that this case falls within the diversity jurisdiction created by 28 U.S.C. § 1332(a)(2), which gives district courts the power to decide civil actions if the amount in controversy exceeds $75,000 and the dispute is between citizens of the United States and citizens or subjects of a foreign state.  The parties to a case brought under § 1332(a) must be completely diverse, which means that no plaintiff may be a citizen of the same state as any defendant.  *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998).  If a plaintiff and a defendant are both foreign citizens, the parties are not completely diverse and the court does not have jurisdiction under § 1332(a).  *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381 (1959) (dictum)).

      To determine whether the parties to an action are completely diverse, the court is tasked with determining the citizenship of the "real and substantial parties to the controversy."  *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 861 (2d Cir. 1995) (quoting *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460 (1980)).  This may require looking beyond the citizenship of the plaintiffs and defendants listed in the caption.  A party that files suit as a mere agent acting in the interest of others is not a real party to the underlying controversy, and therefore, its citizenship is not controlling for purposes of diversity jurisdiction.  *Oscar Gruss & Son, Inc. v. Hollander*, 337

F.3d 186, 194 (2d Cir. 2003); *Airlines Reporting Corp.*, 58 F.3d at 862 (declining to consider citizenship of party that filed suit as "a mere conduit for a remedy owing to others, advancing no specific interests of its own") (citing *McNutt v. Bland*, 43 U.S. 9, 13–14 (1844)).  When a plaintiff sues as a mere agent, the principal's citizenship controls because the principal is the real party to the controversy.  *Oscar Gruss & Son*, 337 F.3d at 194; *Airlines Reporting Corp.*, 58 F.3d at 862.

Of course, the real party to a controversy can assign her legal claim to another person.  But assignments made collusively, for the purpose of manufacturing complete diversity, cannot effectively bring a case within federal diversity jurisdiction.  28 U.S.C. § 1359.  Courts generally conduct a fact-intensive inquiry to determine whether an assignment is collusive.  Wright & Miller, Fed. Prac. & Proc.: Juris. 3d § 3639.  The Second Circuit has made this inquiry by considering whether the assignee had a previous connection to the claim, whether the assignee will remit some or all of the collected funds to the assignor, whether the assignee controls the litigation, whether the assignment was made just before litigation, whether the assignee gave meaningful consideration for the assignment, and whether there was some alternative underlying purpose for the assignment.  *Airlines Reporting Corp.*, 58 F.3d at 863 (collecting cases).[5]  Although courts regularly observe that no single factor is dispositive, *see generally* Wright & Miller § 3639, the Second Circuit has held that an agreement is collusive if its "primary aim is to concoct federal diversity jurisdiction."  *Airlines Reporting Corp.*, 58 F.3d at 862 (quotation marks and citation omitted).  And the Supreme Court has held (under previous versions of the

---

[5] In *Airlines Reporting Corp.*, the Second Circuit applied a presumption of collusion because nine of the fourteen directors of the plaintiff corporation were also representatives of companies that had assigned their claims to the plaintiff.  58 F.3d at 863.  The Court declines to apply that presumption here because neither party has argued that there is such a connection between the noteholders and Cortlandt's directors.

diversity statute) that for-collection-only assignments having little effect other than to manufacture diversity jurisdiction are collusive. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823 (1969) (no diversity jurisdiction over dispute between foreign corporations where one corporation assigned claims to a Texan attorney for consideration of $1 and the attorney agreed to remit 95% of net recovery); *Waite v. City of Santa Cruz*, 184 U.S. 302, 328–29 (1902) (no diversity jurisdiction over suit for recovery on small bonds where multiple bondholders assigned collection rights to one plaintiff to raise amount in controversy above jurisdictional requirement).

      Cortlandt is not a real and substantial party to the controversy between the private investors and the noteholders. Cortlandt has no interest in this case—if it has an interest, it has not demonstrated that interest with any evidence. Cortlandt is suing based on a legal injury suffered by the noteholders to collect money that will be remitted to the noteholders: it is acting as an agent, and no more. The assignments specify that Cortlandt's counsel will be "representing [the noteholder's] interests through" Cortlandt. (Form Assignment at 5.) And to the extent that the assignments convey any stake in this litigation, which they do not appear to do, such assignments would be collusive. It is clear that Cortlandt was incorporated for the sole purpose of collecting on these notes—it is named as a "recovery corporation" and it appears that counsel literally could not wait to file suit until the day Cortlandt was incorporated. There is no evidence that Cortlandt gave any meaningful consideration for these assignments. It is Plaintiffs' burden to demonstrate that these assignments were not collusive; they have not proven that the assignments were made for any purpose other than opening the doors to federal court. Because Cortlandt is acting as a mere agent, it is not a real and substantial party to this controversy. The Court must look to the citizenship of the noteholders for diversity purposes. The noteholders are all foreign citizens, and therefore, the parties to this action are not completely diverse.

Plaintiffs have requested that the Court sever claims against any non-diverse Defendants to preserve subject matter jurisdiction.  They argue that "Defendants are dispensable parties" because they are joint tortfeasors, and therefore, the Court should sever claims against any non-diverse Defendant.  (Pls.' Opp. at 6 (Dkt. No. 61); Pls.' Opp. at 5 (Dkt. No. 69).)  But all Defendants in this action have citizenship in a foreign country; there is no Defendant that could be eliminated to salvage complete diversity.  This case must be dismissed for lack of subject matter jurisdiction.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss this action is GRANTED.  The Clerk of Court is directed to terminate all pending motions and close this case.

SO ORDERED.

Dated: New York, New York
       March 11, 2014

                                                              J. PAUL OETKEN
                                                    United States District Judge