UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                                                                        :
WILMINGTON TRUST COMPANY, as trustee,                                   :
                                                                        :
                                        Plaintiffs,                     :
                                                                        :
                                                                        :
                -v-                                                     :
                                                                        :        12-CV-8686 (JPO)
HELLAS TELECOMMUNICATIONS, S.À.R.L.;                                    :
HELLAS TELECOMMUNICATIONS CO-INVEST LTD.;                              :        OPINION AND ORDER
HELLAS TELECOMMUNICATIONS EMPLOYEES LTD.; :
APAX EUROPE VI-1, L.P.; APAX EUROPE VI-A, L.P.;                        ::
and APAX WW NOMINEES, LTD.,                                            :
                                                                        :
                                        Defendants.                     ;
                                                                        ;
------------------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

In its Third Amended Complaint, Plaintiff Wilmington Trust Company ("WTC") seeks to

recover against the above-captioned Defendants on a judgment it obtained in New York state

court against entities not named here.  Defendants move to dismiss the complaint on a variety of

grounds.  For the reasons that follow, Defendants' motion is granted.

I.      **Background**

This case concerns a financial transaction—a sale of "payment-in-kind" or "PIK" Notes

in the name of a Greek mobile phone company, followed by the redemption of certain of that

company's equity certificates—that has been described in the prior opinions in this case.  The

Court assumes familiarity with the description in those opinions.  *See Cortlandt St. Recovery*

*Corp. v. Aliberti*, No. 12-CV-8686, 2014 WL 941900, at *1-2 (S.D.N.Y. Mar. 11, 2014),

*reconsideration granted*, 2014 WL 6907548 (S.D.N.Y. Dec. 9, 2014); *see also Cortlandt St.*

*Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 790 F.3d 411, 415-16 (2d Cir. 2015) (summarizing

the facts and identifying various cases arising out of them); *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 996 N.Y.S.2d 476, 480-81 (N.Y. Sup. Ct. 2014).

Significant to the arguments at issue here are the particular parties at issue and this case's procedural history.

### A.      The Parties

WTC is the trustee on the Indenture associated with the Notes.  It is also the judgment creditor against Hellas I and Hellas Finance (the "Judgment Debtors").  WTC is a Delaware corporation with its principal place of business in Delaware.  (Dkt. No. 133 ¶ 8.)

The operative complaint (the Third Amended Complaint, hereinafter the "Complaint") alleges that Hellas Telecommunications S.à.r.l. ("Hellas") is a Luxembourg entity with its principal place of business there.  (Dkt. No. 133 ¶ 13.)  The Complaint alleges that Hellas is the general partner of Hellas Finance and the parent of Hellas I, along with other entities.  These subsidiaries were allegedly organized in 2005 by two private equity firms, Apax and TPG, to take ownership of TIM Hellas Telecommunications ("TIM Hellas")—a major Greek mobile phone company.  (*Id.* ¶ 15.)

Two of these Hellas-related entities, and three Apax-related entities, are described in the Complaint as the "Sponsor Defendants" for their sponsorship of the underlying transaction at issue.  The two Hellas-related entities are Hellas Telecommunications Co-Invest Ltd. and Hellas Telecommunications Employees Ltd., which are British Virgin Islands corporations with their principal places of business in the British Virgin Islands.  (*Id.*  ¶¶ 16-17.)  Each is alleged to have received about €70 million in proceeds from the sale of the Notes.  Some of that money was allegedly transferred to executives of TIM Hellas.

The Apax-related entities are Apax Europe V1-1, L.P., Apax Europe VI-A, L.P., and Apax WW Nominees.  The first two entities are limited partnerships with their principal place of business in Guernsey.  (Dkt. No. 133 ¶ 18.)  Apax WW Nominees is a United Kingdom corporation with its principal place of business there.  (Dkt. No. 133 ¶ 19.)  Each of these entities allegedly received proceeds from the sale of the Notes.  Apax WW Nominees is also allegedly "a nominee that has held the assets of" the two Apex Europe VI entities and another entity.  (*Id.*)

The Complaint alleges that Hellas Co-Invest, Hellas Employees, and Apax WW are listed as sponsors in the offering memorandums for the Notes, which also state that they are beneficial owners of Hellas affiliated with and managed by two private equity firms, TPG and Apax.  (*Id.* ¶ 20.)  The three Apax entities are also described as sponsors in the shareholders agreement for Hellas.  (*Id.* ¶ 21.)

The Complaint also alleges the involvement of private equity entities, including the firms Apax and TPG, which are not named as defendants in this case but are described as "Sponsors." According to the Complaint, the Sponsors—including the Sponsor Defendants—dominated and controlled the Judgment Debtors, and they used that control to strip out the loan proceeds from the Judgment Debtors for their own benefit.

**B.    Procedural History**

This case was initially filed on November 29, 2012.  (Dkt. No. 1.)  The original complaint alleged ten theories of contractual and equitable liability against six defendants, which included the three Hellas entities present now but not the three Apax entities.  At the time, WTC and its co-plaintiff, Cortlandt Street Recovery Corporation ("Cortlandt"), explained that the defendants had contested service of process in a related New York state court action, so Plaintiffs had filed a complaint in this Court "to moot any service of process arguments before applicable

statute of limitations have run on any of the claims for relief." (*Id.* ¶ 18.)  Plaintiffs also averred that the allegations in the federal and state cases were largely the same.  (*Id.* ¶ 17.)

On January 14, 2013, Judge P. Kevin Castel ordered Plaintiffs to amend their complaints to cure a jurisdictional defect.  (Dkt. No. 20.)  Judge Castel observed that, for the purposes of diversity jurisdiction, limited partnerships have the citizenship of each of its general and limited partners.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990).  The Complaint named two limited partnerships as defendants, but did not allege the citizenship of the members of those partnerships.  Accordingly, the Complaint failed to plead complete diversity for purposes of subject-matter jurisdiction under 28 U.S.C. § 1332.

The case was reassigned to this Court after Judge Castel's ruling, and Plaintiff filed its First Amended Complaint on February 22, 2013.  (Dkt. No. 29.)  Defendants moved to dismiss. On March 11, 2014, the Court granted that motion and dismissed the case for lack of subject-matter jurisdiction.  (Dkt. No. 77.)  *See Cortlandt*, 2014 WL 941900, at *4.  The Court concluded that Cortlandt had no independent stake in the litigation and was "suing based on a legal injury suffered by the noteholders."  *Id.*  Accordingly, the interests of the noteholders governed the citizenship of Cortlandt for diversity purposes, and the noteholders were not diverse from the defendants.  *Id.*

Plaintiff moved for reconsideration, seeking leave to amend.  (Dkt. No. 79.)  On December 9, 2014, the Court granted the motion and permitted a case to proceed as an action by WTC, the trustee under the relevant Indenture Agreement and a real party in interest, against three foreign Hellas entities.  (Dkt. No. 88.)  *See Cortlandt*, 2014 WL 6907548, at *1.

Before the Court granted the motion for reconsideration, on September 16, 2014, the New York State Supreme Court ruled on motions in its four consolidated actions relating to the

underlying Hellas transactions.  *See Cortlandt*, 996 N.Y.S.2d at 480.  That court dismissed three

of the cases.  *See id.* at 498.  In one case, however, it granted summary judgment in favor of

WTC in the amount of approximately $565 million in payments due under the Notes against two

entities: Hellas Finance and Hellas I.  *Id.* at 490-93.  The decisions in that case are now on appeal

in the New York State Supreme Court's Appellate Division for the First Department.

      WTC then filed the Second Amended Complaint on January 7, 2015.  (Dkt. No. 92.)  On

January 23, 2015, Defendants moved to dismiss once again on jurisdictional grounds.  In its

briefing and at oral argument on the motions, WTC explained that its claims should be

understood as attempts to collect on the state court money judgment, rather than as independent

claims that were likely subject to collateral estoppel as a result of the state court's decision.

Though the Second Amended Complaint did not plead any theory of judgment enforcement,

WTC explained that it would be "happy" to "amend to just focus on the only claim based upon"

the judgment.  (Dkt. No. 122 at 11:3-5; *see id.* at 35:4-6.)  As WTC explained, "the authority to

bring these actions is given by the [state court] judgment."  (*Id.* at 11:15-16.)  On the record, the

Court denied the motions to dismiss without prejudice and granted WTC leave to file an

amended complaint "that focuses on . . . the fact that [WTC is] enforcing this judgment . . .

whether it's a theory of alter ego liability or something else."  (*Id.* at 35:13-21.)

      WTC filed the Third Amended Complaint—the operative Complaint—on November 2,

2015.  (Dkt. No. 133.)  The Third Amended Complaint names the three Hellas entities as

Defendants (Hellas Telecommunications S.à.r.l., Hellas Telecommunications Employees Ltd.,

and Hellas Telecommunications Co-Invest Ltd.), along with three new Apax entities (Apax

Europe V1-1, L.P., Apax Europe VI-A, L.P., and Apax WW Nominees, Ltd.).  It explains that

"WTC seeks to enforce a final judgment entered in its favor" (*id.* ¶ 1), and that it does so through

four theories of liability: (1) that all Defendants other than Hellas—the Sponsor Defendants—are alter egos of the Judgment Debtors; (2) that the Sponsor Defendants are liable for conversion because they received money that should have been paid to WTC by the Judgment Debtors; (3) that those defendants are liable for unjust enrichment, on similar grounds; and (4) that Hellas is liable for satisfaction of the judgment as the general partner of Hellas Finance.  On January 21, 2016, the Defendants moved to dismiss the Third Amended Complaint.  That motion was fully briefed on April 22, 2016.

## II.    Discussion

Defendants move to dismiss on a wide variety of grounds, including under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  The Court begins, as it must, with subject-matter jurisdiction.

### A.    Subject-Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district courts lacks the statutory or constitutional power to adjudicate it."  *Marakova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The "failure of subject matter jurisdiction is not waivable," and "[i]f subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000).  In resolving a motion to dismiss under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  "But [w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *Id.* (citation and internal quotation marks omitted).  "[T]he party who invokes the

6

Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists . . . ."  *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 518 (S.D.N.Y. 2015) (alteration and citation omitted); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").

WTC alleges that this case is within the Court's diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(2).  The diversity statute permits courts to decide civil cases between citizens of the United States and citizens or subjects of a foreign state, so long as the amount in controversy exceeds $75,000.  "It is well established that for a case to fit within § 1332, there must be complete diversity between plaintiffs and defendants," meaning that "every plaintiff be diverse from every defendant."  *Mosher v. Davita Healthcare Partners Inc.*, No. 15-CV-7594, 2016 WL 2997509, at *1 (S.D.N.Y. May 23, 2016) (alteration, citations, and internal quotation marks omitted).  It is also well settled that, for purposes of diversity jurisdiction, the citizenship of a limited partnership is "the citizenship of each of its general and limited partners."  *Id.* at *2 (citing *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016)).

The Complaint does not identify the general or limited partners of Apax Europe V1-1, L.P. and Apax Europe VI-A, L.P. ("Apax VI entities").  WTC has therefore failed to show complete diversity, despite its burden to demonstrate subject-matter jurisdiction by a preponderance of the evidence.

Defendants ask that the entire case be dismissed for lack of subject-matter jurisdiction. The Federal Rules, however, are clear that "[m]isjoinder of parties is not a ground for dismissing an action."  Fed. R. Civ. P. 21.

The appropriate remedy for this failure is to dismiss the Apax VI entities from the case. "On motion or on its own, the court may, at any time, on just terms, add or drop a party." *Id.* A court may "drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensible' under Rule 19(b)." *Walpert v. Jeffery*, 127 F. Supp. 3d 105, 119 (S.D.N.Y. 2015) (citations and internal quotation marks omitted). There is no suggestion here that the Apax VI entities are indispensable.

WTC, in contrast, asks this Court to give it another opportunity to prove jurisdiction. It requests that the Court keep the Apax VI entities in the case and order those entities to divulge their citizenship. But WTC has failed to abide by the basic procedures for pleading diversity jurisdiction. This is the second time WTC has failed to plead the citizenship of limited partnerships. The first time, in January 2013, the Court directed WTC and its then co-plaintiff to amend the complaint. (Dkt. No. 20.) Since then (if not before), WTC has been aware of this legal requirement, yet it failed to plead the citizenship of the limited partnership defendants in its Third Amended Complaint. If it was unable to plead the citizenship of the Apax VI entities, it had tools available to learn that information: Local Rule 26.1, which WTC cites in its brief, permits WTC to call for defendants to provide the information "after a demand." And WTC could always ask for jurisdictional discovery. It made neither such request. And if it had, it would have learned that at least one partner of at least one of the Apax VI entities is a Delaware citizen, destroying diversity. (Dkt. No. 163 at 2-3.) WTC is not entitled to yet another attempt.

In the alternative, WTC asks this Court to exercise ancillary jurisdiction over the Apax VI entities. "Under this concept, a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal." Wright & Miller, 13

Fed. Prac. & Proc. Juris. § 3523.2 (3d ed.).  The doctrine of ancillary jurisdiction applies in a variety of contexts, including actions to enforce a judgment.  *See Tr. of the 1199/SEIU Greater N.Y. Ben. Fund v. Sieger*, No. 07-CV-9744, 2010 WL 3911474, at *3 (S.D.N.Y. Oct. 5, 2010) (citing *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)); *see generally* Wright & Miller, 13 Fed. Prac. & Proc. Juris. § 3523.2.  The Supreme Court, however, has "reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce *its* judgments."  *Peacock*, 516 U.S. at 356 (emphasis added); *see Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 102-05 (2d Cir. 2001).  This is an action to enforce a state court judgment, not a federal judgment, much less this Court's own judgment.  This Court has never acquired jurisdiction over this case or entered a full disposition, such that its inherent power attaches.  *Cf. Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (explaining that district courts lack jurisdiction to enforce settlement agreements they enter, unless the court's order itself incorporates the settlement agreement's terms or the order expressly retains jurisdiction); *Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 352-53 (E.D.N.Y. 2014) (holding that ancillary jurisdiction does not allow one federal district court to enforce the judgment of another federal district court).  Ancillary jurisdiction does not apply here.

To cure this case's incomplete diversity, all claims against Apax Europe V1-1, L.P. and Apax Europe VI-A, L.P. are dismissed.

### B.     Capacity to be Sued

Two Defendants, Hellas Telecommunications Co-Invest Ltd. and Hellas Telecommunications Employees Ltd. (the "Co-Invest entities"), argue that they are dissolved and therefore lack capacity to be sued.  A party which lacks capacity to be sued must be dismissed as a defendant.  *See, e.g., Barner v. Thompson/Ctr. Arms Co. Inc.*, 796 F.3d 897, 903 (8th Cir.

2015); *CBF Industria de Gusa S/A v. Steel Base Trade AG*, No. 14-CV-3034, 2015 WL 1191269, at \*3, 5 (S.D.N.Y. Mar. 16, 2015); *see also In re Facebook, Inc. Initial Public Offering Derivitive Litig.*, 797 F.3d 148, 155 (2d Cir. 2015) (explaining that a district court has discretion to "decide certain threshold bases for dismissal" before other jurisdictional bases).

　　　To determine a party's capacity to be sued, the Federal Rules direct courts to look at a corporation's law of organization, and for all other entities the law of the state where the court is located.  Fed. R. Civ. P. 17(b)(2)-(3); *see Marsh v. Rosenbloom*, 499 F.3d 165, 177 (2d Cir. 2007) ("[H]ow long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power, with the federal government powerless to resurrect a corporation which the state has put out of existence for all purposes." (citation and internal quotation marks omitted)).  As with Rule 12(b) motions, the Court assumes that the factual allegations in the Complaint are true.  *See MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15-CV-3997, 2015 WL 6685523, at \*1 (S.D.N.Y. 2015).  In determining questions of foreign law, however, the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1; *see In re: Petrobras Securities Litig.*, -- F.3d --, 2016 WL 929346, at \*3 n.3 (S.D.N.Y. 2016); *Bigio v. Coca-Cola Co.*, No. 97-CV-2858, 2010 WL 3377503, at \*4 (S.D.N.Y. Aug. 23, 2010).  The Co-Invest entities offer an unrebutted expert affidavit on British Virgin Islands (BVI) law to assist the Court.  (Dkt. No. 152.)  *See In re Petrobras*, 2016 WL 929346, at \*3.

　　　The parties agree that the Co-Invest entities are corporations organized in the BVI.  (*See* Dkt. No. 133 ¶¶ 16-17; Dkt. No. 161 at 19 & n.13, 39-42.)  *See In re Arbitration of Katz*, No. 13-CV-2585, 2014 WL 1224445, at \*1 (S.D.N.Y. Mar. 18, 2014) ("[Defendant] was incorporated in

the [BVI] pursuant to the International Business Companies Act . . . .").  As corporations, by

operation of Rule 17(b)(2), their capacity to be sued is governed by BVI law.  According to the

unchallenged expert declaration, the Co-Invest entities were organized under the BVI

International Business Companies Act (the "Act").  Pursuant to that Act, a company dissolves on

the day the BVI Registrar of Corporate Affairs issues a Certificate of Dissolution.  The Act also

observes that a corporation has legal existence only "until it is dissolved."  Virgin Is. Bus. Cos.

Act § 27 (2004).  The expert declaration does not explain whether dissolved BVI corporations

can be sued under BVI's own laws.  However, the expert points to English law, which it says

would be particularly persuasive—especially since the Privy Council in London is the ultimate

appellate body for the BVI's courts.  Under English law, the expert avers, dissolved companies

may not be sued.  *See Lazard Bros & Co. v. Midland Bank, Ltd.*, [1933] AC 289 (HL) 296

(appeal taken from Eng.); *see also Wight v. Eckhardt Marine GmbH*, [2004] 1 AC 147 (PC) 156

(appeal taken from Cayman Is.) ("When the company is dissolved, there is no longer an entity

which the creditor can sue.").

     While WTC does not challenge the expert directly, it nonetheless disagrees with this

interpretation of BVI law.  Section 197 of the Act, WTC observes, says that a company "may

only be liquidated . . . [if] it has no liabilities; or . . . is able to pay its debts as they fall due."

(Dkt. No. 160 Ex. J.)  Since the Co-Invest entities were liable to the Noteholders, the argument

goes, it could not have been liquidated.  This bare reference to § 197, unsupported by any expert

testimony, misreads the Act.  Section 197 is a substantive provision guiding the liquidation

process elaborated in that Division of the Act, through which the dissolving entities declare their

solvency, a voluntary liquidator is appointed, public notice is given, the liquidator provides for

the payment of all liabilities, and the company is dissolved.  *See* Virgin Is. Bus. Cos. Act §§ 203-

08. Even if violated, § 197—on its face or when read in concert with the rest of the Act—does not automatically invalidate an otherwise-complete corporate dissolution, and WTC provides no expert declaration or case law to support such a view. The Court therefore agrees with the analysis presented by Defendants' expert. *See In re Petrobras*, 2016 WL 929346, at *4.

Given this interpretation of the Act, the Court concludes that the Co-Invest entities lack the capacity to be sued. These entities received certificates of dissolution on October 10, 2007. (Dkt. No. 152 Exs. 1-2.) They have not been reconstituted under BVI law. Accordingly, they are dissolved and lack any suable remainder. Insofar as WTC seeks to recover assets allegedly transferred to the Co-Invest entities in violation of the law, they must follow those assets where they lie or move in the BVI to void the dissolution of the entities.

Finally, WTC argues that BVI law does not govern the entities' capacity to be sued by application of the "internal affairs doctrine," a "conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs." *Roselink Inv'rs, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 224-25 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). Under that doctrine, the "law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation." *Id.* at 225 (quoting *First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983)). BVI law accordingly governs the entities' internal affairs. But since WTC's claims are tort claims, the argument goes, the internal affairs doctrine does not apply. *See id.* This argument is orthogonal to this case: the conflict of laws issue is squarely controlled by Rule 17. *Cf.* Fletcher on Corporations § 4223.50 (describing situations where the internal affairs doctrine applies).

Notwithstanding the strictures of Rule 17, WTC argues that this Court has power under "well-established principles of equity" to keep the Co-Invest entities in the case. In support of this proposition, WTC cites a variety of cases applying *New York*'s rule that dissolved

12

corporations have the capacity to sue and be sued.  *See In re Grand Jury Subpoenas Issued to Thirteen Corps.,* 775 F.2d 43, 47–48 (2d Cir. 1985) (citing N.Y. Bus. Corp. L. § 1006(a)); *McCready v. Nat'l Credit Sys, Inc.,* No. 07-CV-7705, 2010 WL 815079, at *1 (S.D.N.Y. Mar. 9, 2010) (same); *Linzer v. EMI Blackwood Music, Inc.,* 904 F. Supp. 207, 213 (S.D.N.Y. 1995) (same); *see also New York v. Longboat, Inc.,* 140 F. Supp. 2d 174, 177 (N.D.N.Y. 2001) (citing New York law and a particular federal statutory scheme).  That rule is a creature of statute, not the common law.  *See Marsh*, 499 F.3d at 172; *McCagg v. Schulte Roth & Zabel LLP*, 74 A.D.3d 620, 626 (N.Y. App. Div. 1st Dep't 2010) ("At common law, the dissolution of a corporation ended its existence, thus annulling all pending actions by and against it and terminating its capacity thereafter to sue or be sued.  However, legislation can be enacted to prolong the life of a corporation past its date of dissolution for designated purposes." (citations omitted)).  As explained above, this issue is governed by BVI law, not New York law, and WTC cites no case for the proposition that the Court can or should apply its equity powers to expand Rule 17.

Hellas Telecommunications Co-Invest Ltd. and Hellas Telecommunications Employees Ltd. have dissolved and are incapable of being sued.  Accordingly, all claims against them are dismissed.

### C.       Personal Jurisdiction

In light of the foregoing analysis, two entities remain in this case: Apax WW Nominees, Ltd., and Hellas Telecommunications, S.à.r.l ("Hellas").  Each moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) (citation and internal quotation marks omitted).  Where, as here, the motion to dismiss is made prior to jurisdictional discovery, a plaintiff "may defeat the motion

by pleading in good faith, legally sufficient allegations of jurisdiction.  At th[is] preliminary

stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester*

*Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (citation and internal

quotation marks omitted).  Accordingly, as with a Rule 12(b)(6) motion, the Court "construe[s]

the pleadings and affidavits in the light most favorable to the plaintiffs, resolving all doubts in

their favor." *Id.* (citation omitted).  The Court need not, however, accept the truth of legal

conclusions "couched as a factual allegation." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 270

(S.D.N.Y. 2015) (quoting *In re Terrorist Attacks*, 715 F.3d 659, 673 (2d Cir. 2013)).

To make out a prima facie case of personal jurisdiction over a foreign defendant, a

plaintiff must perform a two-step pavane.  *See generally, e.g.*, *United States v. Walker*, 665 F.3d

212, 232 (1st Cir. 2011) (Selya, J.).  First, the plaintiff must show that New York law permits the

exercise of personal jurisdiction over the defendants.  *Wallert*, 141 F. Supp. 3d at 271.  Second,

if it is, "the Court must determine whether 'an exercise of jurisdiction under these laws is

consistent with federal due process requirements.'" *Id.* (quoting *Grand River Enters. Six*

*Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)).

WTC's theory of jurisdiction differs for the remaining defendants.  The Court takes each

in turn.

### 1.      Apax WW Nominees

Rather than seek general or specific jurisdiction directly over Apax WW Nominees,

WTC attempts a different two-step approach.  It argues that (1) the Court has personal

jurisdiction over Hellas Finance and Hellas I, the Judgment Debtors, and (2) it therefore has

personal jurisdiction over the alter egos of those Judgment Debtors—including Apax WW

Nominees.  *See S. New Eng. Tele. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("It

is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process."); *Miramax Film Corp. v. Abraham*, No. 01-CV-5020, 2003 WL 22832384, at *6 (S.D.N.Y. Nov. 25, 2003).

WTC's first move is not based on a familiar review of the Judgment Debtors' activities, contacts, or business in New York. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624-25 (2d Cir. 2016) (describing specific and general jurisdiction). The Amended Complaint suggests that the basis for personal jurisdiction is a forum selection clause in the Indenture. In its motion, however, WTC expressly declines to press this argument, proclaiming instead that it "reserves all rights to argue that" theory. (Dkt. No. 161 at 33 n.15.)

Instead, WTC's theory—never explicitly stated—seems to be that this Court has personal jurisdiction over the Judgment Debtors by virtue of the fact that they are judgment debtors. The New York State Supreme Court, of course, has continuing jurisdiction on this basis, having already assumed jurisdiction over the Judgment Debtors through a forum selection clause. But this Court must determine its own jurisdiction in this, a separate proceeding. *Cf. Epperson*, 242 F.3d at 104-07 (explaining that, in the subject-matter jurisdiction context, that cases "seeking to establish liability on the party of a new party not otherwise liable" require an independent basis for jurisdiction).

Nonetheless, the fact of the New York judgment is enough to create specific jurisdiction in New York over the Judgment Debtors. New York's long-arm statute authorizes specific jurisdiction over a non-domiciliary defendant who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). That statutory provision is satisfied when a party "has purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws," and when the cause of action has an "articulable nexus,

or a substantial relationship" with "the actions that occurred in New York." *Reich v. Lopez*, 38

F. Supp. 3d 436, 457 (S.D.N.Y. 2014). Here, the Judgment Debtors elected to litigate in New

York and defended a lawsuit in its courts, clearly invoking the benefits and protections of New

York laws. The cause of action here—for collection on that judgment—obviously has a nexus

with that activity. Accordingly, this Court and other New York courts have personal jurisdiction

over the Defendants for the narrow category of actions to enforce that judgment. *See Licci ex*

*rel. Licci v. Leb. Can. Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012) (explaining that specific

jurisdiction can arise on the basis of a "single act").

Personal jurisdiction over the Judgment Debtors must also conform to the requirements

of due process. "Generally, a court may exercise personal jurisdiction over a nonresident

defendant only so long as there exist 'minimum contacts' between the defendant and the forum

state." *Doe v. Del. St. Police*, 939 F. Supp. 2d 313, 331 (S.D.N.Y. 2013) (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). This is not one of the "rare" cases in

which the Judgment Debtors' minimum contacts with New York are sufficient under state law

but not for due process purposes, or in which the exercise of jurisdiction would be unreasonable.

*Eades*, 799 F.3d at 168.

The cases cited by Defendants are not to the contrary. Many of those cases simply stand

for the proposition that jurisdiction over alter egos requires an "initial finding" of jurisdiction

over the original entity. *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150 (S.D.N.Y. 2004).

Another stands for the unremarkable position that "[a] party's consent to jurisdiction in one

case . . . extends to that case alone." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d

Cir. 1991); *see also Eastman Kodak Co. v. Aisa Optical Co., Inc.*, No. 11-CV-6036, 2012 WL

2148198, at *6 (S.D.N.Y. June 13, 2012). Here, however, the Court's exercise of jurisdiction

16

over the Judgment Debtors hinges not on their consent, but on the existence of a valid New York

judgment against them which the judgment creditor is trying to enforce.  Hellas also cites a case

in which the Second Circuit affirmed dismissal of a case by a judgment creditor against entities

related to the judgment debtor on personal jurisdiction grounds.  *Univ. Trading & Inv. Co. v.*

*Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 56 (2d Cir. 2014).  The judgment creditors

there, however, were seeking to enforce a *Massachusetts* judgment in *New York* court, so the

judgment could not itself be a basis for personal jurisdiction.  *See Univ. Trading & Inv. Co. v.*

*Credit Suisse (Guernsey) Ltd.*, No. 12-CV-0198, 2012 WL 6186598, at *1 (S.D.N.Y. Dec. 12,

2012).  None of these cases alters the Court's conclusion that it has personal jurisdiction over the

Judgment Debtors in an action to enforce the judgment.

        WTC's argument fails at the second maneuver. To begin, the parties dispute the

appropriate test for alter ego liability.  Personal jurisdiction in a diversity case is a creature of

state law.  Accordingly, the appropriate test is that of New York, not the federal common law test

proposed by WTC.  *Compare Brown*, 814 F.3d at 624 ("The amenability of a foreign corporation

to suit in a federal court in a diversity action is determined in accordance with the law of the state

where the court sits, with 'federal law' entering the picture only for the purpose of deciding

whether a state's assertion of jurisdiction contravenes a constitutional guarantee." (quoting

*Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc) (Friendly, J.))

(alteration omitted)), *with Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14-CV-2168,

2014 WL 5778535, at *3 (S.D.N.Y. Nov. 6, 2014) (citing *Williamson v. Recovery Ltd. P'ship*,

542 F.3d 43, 53 (2d Cir. 2008)) (applying a federal common law test in an admiralty case).

Neither party suggests the use of the law of the Judgment Debtor's places of incorporation.  *See*

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*, No. 14-CV-804, 2014 WL 3857053, at
*7 (S.D.N.Y. Aug. 5, 2014).

The parties also dispute the test for alter ego liability in New York.  Both sides agree that
the issue is whether "the activities of the parent show a disregard for the separate corporate
existence of the subsidiary."  *Wilder v. News Corp.*, No. 11-CV-4947, 2015 WL 5853763, at *6
(S.D.N.Y. Oct. 7, 2015).  The test for personal jurisdiction over an alleged alter ego is "less
onerous" than the test to establish liability over an alter ego.  *D. Klein & Son, Inc. v. Good
Decision, Inc.*, 147 F. App'x 195, 196 (2d Cir. 2005).  Apax contends that this issue is evaluated
through four factors identified by the Second Circuit in *Volkswagenwerk Aktiengesellschaft v.
Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984): (1) "common ownership," (2) "financial
dependency of the subsidiary on the parent corporation," (3) "the degree to which the parent
corporation interferes in the selection and assignment of the subsidiary's executive personnel and
fails to observe corporate formalities," and (4) "the degree of control over the marketing and
operation policies of the subsidiary exercised by the parent."  *Wilder*, 2015 WL 5853763, at *6
(quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).  WTC, in contrast, refers
the Court to the factors in *Wm. Passalacqua Builders, Inc. v. Resnick Developers So., Inc.*, 933
F.2d 131 (2d Cir. 1991).  Under the *Passalacqua* test, courts determine the "degree of
domination by the parent" with reference to ten factors:

> (1) the absence of the formalities and paraphernalia that are part
> and parcel of the corporate existence, *i.e.*, issuance of stock,
> election of directors, keeping of corporate records and the like;
>
> (2) inadequate capitalization;
>
> (3) whether funds are put in and taken out of the corporation for
> personal rather than corporate purposes;
>
> (4) overlap in ownership, officers, directors, and personnel;

(5) common office space, address, and telephone numbers of
corporate entities;

(6) the amount of business discretion displayed by the allegedly
dominated corporation;

(7) whether the related corporations deal with the dominated
corporation at arms length;

(8) whether the corporations are treated as independent profit
centers;

(9) the payment or guarantee of debts of the dominated corporation
by other corporations in the group; and

(10) whether the corporation in question had property that was
used by another of the corporations as if it were its own.

*See N.Y. St. Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014)

(alterations omitted) (quoting *Passalacqua*, 933 F.2d at 139).

These tests are overlapping. Insofar as courts use them differently, the *Passalacqua* test

is more commonly employed when determining the appropriateness of veil-piercing as a matter

of liability, while *Beech* is often used to determine alter ego responsibility for jurisdictional

purposes. *See, e.g.*, *D. Klein & Son, Inc.*, 147 F. App'x at 196-97; *In re Vebeliunas*, 332 F.3d 85,

90 n.3 (2d Cir. 2003); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308,

319 (S.D.N.Y. 2009). The *Beech* test, however, is concerned with connecting a parent company

with "mere departments," rather than with the broader alter ego analysis at issue here. *E.g.*, *SPV*

*OSUS Ltd. v. AIA LLC*, No. 15-CV-619, 2016 WL 3039192, at *3 (S.D.N.Y. May 26, 2016).

And courts in this circuit have sometimes applied the *Passalacqua* test at the personal

jurisdiction stage. *See, e.g.*, *Vista Food Exch*, 2014 WL 3857053, at *9; *Bank of Am. v. Apollo*

*Enter. Solutions, LLC*, No. 10-CV-5707, 2010 WL 4323273, at *4 (S.D.N.Y. Nov. 1, 2010).

Under either of these tests, the allegations in the Complaint are insufficient to make out a prima facie case that Apax WW Nominees is the alter ego of Hellas Finance and Hellas I (the Judgment Debtors). WTC offers allegations against Apax WW Nominees itself only in two places, namely, where it identifies Apax WW Nominees as a beneficial owner of Hellas and as recipient of loan proceeds from Hellas I. (Dkt. No. 133 ¶¶ 19-21, 50.) Otherwise, WTC refers to the Apax WW Nominees in a group with the two other Apax VI entities and the two Hellas Co-Invest entities, which it describes collectively as "Sponsors" or "Sponsor Defendants" that have acted with "other Sponsors"—including, at times, the private equity firms TPG and Apax.

These allegations are insufficient to establish that Apax WW Nominees is an alter ego of Hellas I and Hellas Finance. "Each defendant's contacts with the forum State must be assessed individually." *Doe*, 939 F. Supp. 2d at 332 (alteration omitted) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Accordingly, even if the Complaint adequately alleged that the Sponsor Defendants collectively dominated Hellas I and Hellas Finance, owned them, guaranteed their debts, and directed their marketing, it would not show that *Apax WW Nominees* dominated them in the same way. Consider, for example, if WTC attempted to allege personal jurisdiction over Intel because the "Dow 30" companies have contacts in New York, and Intel is a member of the Dow 30. Perhaps Intel has jurisdictionally significant contacts in New York, but that must be alleged specifically. Similarly, it is possible that personal jurisdiction over Apax WW Nominees is justified through its relationship with the Sponsor Defendants. But no such relationship is alleged in the Complaint; WTC does not, for example, identify the owners of Apax WW Nominees. *See Pablo Star Ltd. v. Welsh Gov't*, No. 15-CV-1167, 2016 WL 1056590, at *4 n.3 (S.D.N.Y. Mar. 16, 2016).

The thrust of WTC's argument appears to be that the contacts of the Sponsor Defendants and Sponsors are attributable to Apax WW Nominees.  But it offers no allegations to support such a theory, such as an allegation that Apax WW Nominees is itself the alter ego of the Apax private equity fund.[1]  In any event, even if all of the allegations against the Apax Defendants are attributed to Apax WW Nominees, the allegations do not support a *prima facie* case of alter ego jurisdiction under *Beech* or *Passalacqua*.  The Complaint does not allege that the *Apax* Defendants specifically owned a large share of Hellas I or Hellas Finance.  This is "essential for an assertion of jurisdiction" under *Beech*.  *Glencore AG v. Bharat Aluminum Co.*, No. 10-CV-5251, 2010 WL 4323264, at *5 (S.D.N.Y. Nov. 1, 2010).  Rather, WTC offers only the generalized assertion that the Sponsors—including the Sponsor Defendants, therefore including the Apax entities, therefore including Apax WW Nominees—owned "Hellas and its Subsidiaries," a group of entities that presumably includes Hellas I and Hellas Finance.  (Dkt. No. 133 ¶ 66.)  The shareholder agreement, attached to the Complaint, could be read to imply the existence of such an ownership interest by the Apax Defendants.  But even then, the Complaint

---

[1] For similar reasons, even if the Court had personal jurisdiction over Apax WW Nominees, it would dismiss the Third Amended Complaint for engaging in improper group pleading under Fed. R. Civ. P. 8(a).  That rule requires that a plaintiff give "each defendant fair notice of the claims against it."  *Automated Transaction LLC v. N.Y. Community Bank*, No. 12-CV-3070, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013) (quoting *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012), *adopted by* 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012)).  As noted above, the Complaint identifies Apax WW Nominees itself for only two purposes: as a recipient of money from sale of the Notes, and as one of several "Sponsors" or "Sponsor Defendants" under various agreements.  By pleading in this group manner, it is unclear whether Apax WW Nominees has liability under any claim for its own acts, as the alter ego of the Judgment Debtors, or as a shell company for another entity.  Insofar as WTC attempts to suggest that the various private equity entities engaged in a "common enterprise," WTC must allege facts supporting the existence of that common enterprise.  *See FTC v. The Tax Club, Inc.*, 994 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2014); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at * 29-30 (E.D.N.Y. Sept. 22, 2015).

alleges nothing specific about the Apax Defendants with regard to the remaining *Beech* factors. Rather, the allegations are almost entirely made as between "Hellas and its Subsidiaries" and the "Sponsors" or "Sponsor Defendants." It is clear from the shareholders agreement that Hellas and TIM Hellas were *jointly* controlled by the Apax Defendants and other Apax entities, as well as by TPG and its affiliates, and that Hellas and TIM Hellas each had a separate board of directors. (Dkt. No. 133 Ex. A at 8-9.) *See Wilder*, 2015 WL 5853763, at *10 (explaining that alter ego liability requires more than the control "normally exercised by boards of directors," even if the boards of the parent and subsidiary overlap). Indeed, in one of the few references to a specific entity, the Complaint alleges that the books and regards of "Hellas and its Subsidiaries" were maintained by TPG Partners IV, L.P., a non-party. (Dkt. No. 133 at ¶ 79.) These generalized allegations are inadequate to make out a *prima facie* case that Hellas and its subsidiaries have been "so dominated" by Apax, "and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *OOO v. Empire United Lines Co.*, 557 F. App'x 40, 45 (2d Cir. 2014) (internal quotation marks omitted).

Accordingly, the Court lacks personal jurisdiction over Apax WW Nominees, and all claims against it are dismissed.

### 2.      Hellas Telecommunications

The only remaining claim is Claim Three, which asserts liability against Hellas as general partner of Hellas Finance. WTC does not allege that Hellas is an alter ego of the Judgment Debtors. Rather, its theory of personal jurisdiction over Hellas is that, "where a court has personal jurisdiction over a general partnership, it also has personal jurisdiction over the general partners." *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 616 (S.D.N.Y. 2008) (Chin, J.); *see id.* (distinguishing *Falik v. Smith*, 884 F. Supp. 862, 866 (S.D.N.Y. 1995)).

This rule stems from New York agency law.  Under New York law, long-arm jurisdiction can arise over a principal through the activities of its agent, and in a joint partnership, each partner is an agent of the others.  *Durkin v. Shea*, 957 F. Supp. 1360, 1366 (S.D.N.Y. 1997).  Accordingly, if a New York court has jurisdiction over a partnership through the actions of one partner, the court also has jurisdiction over the other non-resident partners.  *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03-CV-917, 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003); *see also Wichita Fed. Sav. & Loan Ass'n v. Comark*, 586 F. Supp. 940, 943 (S.D.N.Y. 1984).

WTC has sufficiently alleged that Hellas is the general partner of Hellas Finance.  It specifically alleges so in the Complaint.  (Dkt. No. 133 ¶¶ 13-14.)  It is true that Hellas Finance is also sometimes described as an S.C.A, or *société en commandite par actions* created by Luxembourg law.  (Dkt. No. 133 ¶¶ 1.)  *See Cortlandt*, 996 N.Y.S.2d at 480.  But WTC argues that, pursuant to Article 102 of the Luxembourg Law Concerning Commercial Companies, the general partner of an S.C.A. is jointly and severally liable for the obligations of the partnership.  (Dkt. No. 161 at 41-42; *see* Dkt. No. 133 ¶¶ 118-19.)  And Hellas's unrefuted expert declaration explains that an S.C.A. can have a general partner and manager with "personal, indefinite joint and several liability for the company's debts."  (Dkt. No. 154 Ex. B.)

But alleging general partnership does not end the matter.  Under New York law, for a state court judgment against a partnership to give rise to jurisdiction over the general partners, the general partners must be served in the original action:

> Naming the partnership and serving any individual general partner enables the plaintiff to secure a judgment good against assets held by the partnership.  If the plaintiff would have the judgment good against the personal assets of an individual partner, too, he must see to it that that partner is also named in the caption and is individually served.

Siegel, N.Y. Prac. § 69 (5th ed.); *see* N.Y. CPLR § 1502 ("A subsequent action against a co-obligor who was not summoned in the original action must be maintained in order to procure a judgment enforceable against his individually held property for the sum remaining unpaid upon the original judgment . . . ."); *id.* § 5201(b) ("A money judgment entered upon a joint liability of two or more persons may be enforced against individual property of those persons summoned and joint property of such persons with any other persons against whom the judgment is entered.")  While all partners may be liable for the acts of the partnership, "[t]he mere fact that personal liability may exist is only half of the equation.  Personal jurisdiction must be obtained over each of the potentially liable partners for their potential liability to be realized."  *Somer & Wond P.C. v. Rotondi*, 642 N.Y.S. 2d 937, 939 (N.Y. App. Div. 2d Dep't 1996) (treating this issue as jurisdictional); *cf. U.S. Bank*, 582 F. Supp. 2d at 615-16 (asserting jurisdiction over a partnership and its general partners at the outset of a case's liability phase); *see also, e.g.*, *Tally v. 885 Real Estate Assocs.*, 782 N.Y.S. 2d 431, 432 (N.Y. App. Div. 1st Dep't 2004) ("The individual partners, however, were never named or served with process in the proceedings which resulted in the judgment, and, accordingly, enforcement of the underlying order and judgment may not be had against them personally.").

It is true, therefore, that the New York state court would have had personal jurisdiction in the original action over Hellas as a general partner of Hellas Finance.  But in this action purely to enforce the state court judgment—which is not a new action for liability on the Notes—the Court has jurisdiction over Hellas only if it was served in the original state court action.  It was not. *See Cortlandt*, 996 N.Y.S.2d at 482 ("The third PIK Note action . . . is a motion for summary judgment in lieu of complaint . . . . This motion-action is brought by WTC, as trustee under the PIK Note indenture, and by Cortlandt, as assignee, against Hellas Finance and Hellas I, as issuer

and guarantor, to recover on the PIK Notes."); *Wilmington Trust Co. v. Hellas Telecommunications Finance, S.A.C.*, No. 653363/2011, Dkt. Nos. 6-8, 10-12; *see also Cortlandt*, 996 N.Y.S.2d at 490 ("Defendants Hellas Finance and Hellas I cross-move to dismiss the action . . . .").

It can be difficult to assert personal jurisdiction over all the relevant entities in cases involving complex financial transactions such as this one.  Those challenges, however, come from the Constitution and federal statutes, which limit a plaintiff's ability to demand that an array of defendants appear in one foreign forum to satisfy the plaintiff's claims.  WTC has its judgment.  It now may attempt to execute that judgment against the debtors' assets wherever those assets lie, including by participating in any relevant bankruptcy proceedings and by seeking recovery based on the theories identified in this Complaint.  It simply may not do so all at once in this Court.  *Cf., e.g.*, *HSH Nordbank AG N.Y. Branch v. Street*, No. 11-CV-9405, 2012 WL 2921875, at *1 (S.D.N.Y. July 18, 2012) (dismissing some parties but not others for lack of jurisdiction in a case where plaintiff sought to enforce a judgment through a fraudulent conveyance theory).

### D.        Failure to State a Claim

Finally, even if the Court had personal jurisdiction over Hellas, it would conclude that the Complaint fails to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In determining whether this standard is satisfied, courts assume that all "factual allegations contained in the complaint" are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all inferences in the

light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (citation omitted).

As a preliminary matter, Hellas argues that WTC lacks standing under the Indenture to bring claims against it. This argument lacks merit. *See Allen v. New York City Housing Auth.*, No. 15-CV-173, 2016 WL 722186, at *4 (S.D.N.Y. Feb. 19, 2016) (explaining that a district court must address subject-matter jurisdiction prior to the merits). As the state court concluded, WTC has standing to pursue "any available remedy" for "payment on the Notes," but not separate fraudulent conveyance claims. *Cortlandt*, 996 N.Y.S.2d at 494-95. The claims here, like those barred in the state court case, are third-party claims related to the PIK Notes. But unlike those claims, these claims do not seek to establish liability against the third parties under a separate theory, but rather seek payment on the Notes from different creditors. WTC has standing to bring such claims.

The Court finds that the Indenture is incorporated by reference in and integral to the Complaint. (Dkt. No. 148 Ex. B.) *See Francis v. Brennan*, No. 15-CV-3726, 2016 WL 3093984, at *1 (S.D.N.Y. June 1, 2016). Section 14.07 of that document provides:

> No director, officer, employee, incorporator, member, or stockholder of [Hellas I], [Hellas Finance] (including its general partner [Hellas]) or any Guarantor will have any liability for any obligations of [Hellas I], [Hellas Finance] or any Guarantor under the Notes, any Guarantee, any Security Document, or this Indenture or for any claim based on, in respect of, or by reason of such obligations or their creation. Each Holder by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes. Such waiver and release may not be effective to waive liabilities under the U.S. federal securities laws.

It is undisputed that this provision, by its terms, bars WTC's claim against Hellas.

26

WTC argues instead that this no-recourse clause is unenforceable under New York law. It is true, as WTC points out, that courts have deemed void similar no-recourse clauses as against public policy when applied against equitable or tort claims. But courts have enforced no-recourse clauses as applied to contract claims. *See LaSalle Nat'l Bank v. Perelman*, 141 F. Supp. 2d 451, 459-63 (D. Del. 2001) (collecting cases). Those cases hold that a claim for fraudulent conveyance and alter ego liability would likely not be barred by this provision. *See Banker's Tr. Co. v. Hale & Kiburn Corp.*, 84 F.2d 401, 405 (2d Cir. 1936) (fraud claims are not barred); *LaSalle Nat'l Bank*, 141 F. Supp. 2d. at 463 (alter ego claims are equitable and not barred).

WTC urges that this case is a non-contractual claim to enforce the judgment, so the no-recourse claim is unenforceable. Not so. A claim for nonpayment under a contract is a contract claim. *See Caplan v. Unimax Holdings Corp.*, 591 N.Y.S.2d 28, 29 (N.Y. App. Div. 1st Dep't 1992); *see also In Re Smurfit-Stone Container Corp.*, 444 B.R. 111, 121 & n.9 (D. Del. Bankr. 2011). WTC's judgment against the Judgment Debtors is a claim for nonpayment. *Cortlandt*, 966 N.Y.S.2d at 490. The claim for enforcement of a contract judgment is akin to a contract claim. It is not a claim that alleges any fraud on Hellas's part, or any equitable reason that it should be held liable. It is simply one of contract liability, applied to Hellas by virtue of the Hellas entities' corporate form. WTC's rule, as Hellas points out, would lead to an absurd result: the Indenture would bar a suit by WTC against Hellas for nonpayment under the contract, but it would allow enforcement of a judgment for nonpayment under the contract against Hellas. The Court declines to adopt such a reading.

**III.    Conclusion**

For the foregoing reasons, Defendants' motions to dismiss this action are hereby

GRANTED.  WTC's letter motion to strike an argument from Defendants' reply briefs is

DENIED as moot.

The Clerk of Court is directed to terminate the motions at docket numbers 146, 149, and

153, and to close this case.


SO ORDERED.


Dated: August 4, 2016
       New York, New York

_____
          J. PAUL OETKEN
       United States District Judge